Albert G. MACLEOD, Appellant,

v.

GEORGETOWN UNIVERSITY
MEDICAL CENTER, et
al., Appellees.

No. 97–CV–1678.

District of Columbia Court of Appeals.

Argued March 30, 1999.
Decided Aug. 19, 1999.

Stephen M. Trattner, Washington, DC, for appellant.

Christopher E. Hassell, with whom Eric A. Spacek was on the brief, Washington, DC, for appellees.

Before STEADMAN, SCHWELB and FARRELL, Associate Judges.

STEADMAN, Associate Judge:

In this medical malpractice case, appellant sued for ten million dollars for permanent damage to his left ear allegedly resulting from negligent wax removal by physicians at Georgetown University Medical Center. Appellant proceeded *pro se* in this matter throughout the trial court proceedings. The trial judge granted the defendants' motion for summary judgment. Appellant now appeals with counsel to this court. The essence of his appeal is that because he was a *pro se* litigant, the court

had the duty to apprise him of the defects in his opposition to the defendants' summary judgment motion and, in particular, of the importance of filing controverting affidavits. We conclude that in the circumstances here the court had no such mandatory obligation. We affirm the summary judgment.

## I. Facts

Appellant filed his complaint in June 1996. An initial status conference took place in October 1996. Appellant was granted numerous extensions by the court to effect service of process and to respond to defendants' discovery requests. A scheduling order, signed January 24, 1997, allowed a discovery period ending July 24, 1997. Defendants submitted their witness list on April 24, 1997, the same day appellant served his interrogatories and requests for admissions. Appellant's 26(b)(4) statement was timely filed on May 8, 1997. It listed four physicians, including the two defendant-physicians, as "expert witnesses." Appellant's statement did not otherwise comply with the rule as to the substance of the expected testimony.[1]

On July 23, 1997, defendants filed a straightforward motion for summary judgment, specifically citing to Super. Ct. Civ. R. 56(c). The motion gave a clear explanation of what the case lacked. In the motion papers, the defendants noted that contrary to the requirements of Rules 16 and 26(b)(4), plaintiff had failed to identify the substance of the expert testimony. They argued that to make out a case of medical malpractice, the plaintiff had to produce expert testimony which established the applicable standard of care, a breach thereof, and resulting injuries. Affidavits were attached from each of the four experts named by plaintiff. Each affidavit stated that no breach of any standard of care had occurred or caused appellant's injuries. Thus, the motion asserted, there simply was no competent evidence to support the naked allegation that the defendants' care was negligent and incompetent, nor that the alleged injuries were causally related to the treatment rendered by defendants.

In his response, appellant displayed his awareness of the required elements of proof for a medical malpractice claim.[2] Appellant further recognized the need for expert testimony. He asserted in his response that he would prove his case generally through cross-examination of the four doctors who had submitted affidavits, and that he would also make use of his treating physicians, whom he had previously designated as fact witnesses. The appellant stated in his reply that he "believes that he has shown sufficient evidence supporting the claimed factual dispute." Nowhere, however, did he set forth with any specificity, even in his own words, the subject matter on which these expert witnesses were expected to testify or the substance of the facts they would relate or of the opinions that they would express to prove his case, much less attach any affidavits or other statements from the experts themselves.[3] In a surreply submission,[4] he stated that "it seems that Defendants wish to hold the entire trial right now and forcefully compel me to divulge every ounce of

---

1. The statement shall "state the subject matter in which the expert is expected to testify and ... the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for such opinion." Super. Ct. Civ. R. 26(b)(4). An earlier witness list under Rule 16 had been filed April 28, 1997 and included two other treating physicians as "fact witnesses."

2. Appellant stated "I intend on proving that there indeed was a breach of the standard of care alleged in this lawsuit, and and [sic] causation, due to the negligence of the Defendants."

3. In his surreply, appellant offered an exhibit from one of the physician's medical records which he purported would contradict the affidavits, but which the trial court correctly observed did no such thing.

4. Defendants filed a motion for summary judgment, appellant filed an opposition, defendants filed a reply to the opposition, and appellant filed a surreply. These submissions extend over sixty pages of the record.

evidence and strategy I intend on using at trial. I will not do that. Nor do I believe I am obligated to do that in order to oppose a motion for summary judgment."

In a careful six-page order, the trial court addressed all of these arguments by appellant, but concluded that the defendants were entitled to summary judgment. The court quoted the Rule 56(e) requirement that "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing there is a genuine issue for trial." It noted that plaintiff had simply stated, without documentation or other support, that his experts would testify on the necessary elements; the plaintiff had offered no evidence on how his claims were supported, but instead made only conclusory allegations, insufficient as a matter of law.

## II. Analysis

▪ Plainly the trial court was correct in granting summary judgment on the basis of the record before it. The only issue is whether, before doing so, the court itself had an obligation to point out to appellant the deficiencies in his opposition. Appellant claims in particular that the trial court was obligated to advise the appellant that he must produce affidavits from his proposed expert witnesses.

▪ Parties in litigation may of course represent themselves. We have, however, often reiterated the general principle that "such a litigant can expect no special treatment from the court." *Abell v.. Wang,* 697 A.2d 796, 804 (D.C.1997). "[H]e must not expect or seek concessions because of [his] inexperience and lack of trial knowledge and training and must, when acting as [his] own lawyer, be bound by and conform to the rules of court procedure ... equally binding upon members of the bar." *Solomon v. Fairfax Village Condominium IV Unit Owner's Ass'n,* 621 A.2d 378, 380 n. 2 (D.C.1993) (quoting *Paton v. Rose,* 191 A.2d 455 (D.C.1963)). Other courts have similarly articulated this general proposition. Our own federal appellate circuit court, in an opinion by then Judge Scalia, has explained that "[a]t least where a litigant is seeking a monetary award, we do not believe *pro se* status necessarily justifies special consideration (citation omitted). While such a *pro se* litigant must of course be given fair and equal treatment, he cannot generally be permitted to shift the burden of litigating ·his case to the courts, nor to avoid the risks of failure that attend his decision to forego expert assistance." *Dozier v. Ford Motor Co.,* 227 U.S.App. D.C. 1, 6, 702 F.2d 1189, 1194 (1983). *See also Moore v. Agency for Int'l Dev.,* 301 U.S.App. D .C. 327, 329, 994 F.2d 874, 876 (1993) (the court "do[es] not need to provide detailed guidance to *pro se* litigants," nor does liberal treatment "constitute a license for a plaintiff filing *pro se* to ignore the Federal Rules of Civil Procedure." (internal quotation omitted)); *Mazique v. Mazique,* 123 U.S.App. D.C. 48, 52, 356 F.2d 801, 805 (1966).

This is by no means to say that *pro se* litigants must be left to fend entirely for themselves. We need not recount here the numerous steps that our trial and appellate courts have taken to assist *pro se* litigants in dealing with the judicial system.[5] And "[w]e do not doubt that a trial judge may, without compromising requisite judicial impartiality, provide reasonable technical assistance to a *pro*

---

**5.** To give just one example close to home, this court has available, in both English and Spanish, an extensive hand-out entitled "Your Case on Appeal" designed especially for *pro se* appellants.

In this regard, we note appellant's argument that since the "Civil Action Information Handbook" prepared by the Superior Court and setting forth "basic information" to aid the *pro se* litigant does not contain a section on summary judgment, the trial court has a particular duty in that regard. We do not think that the commendable effort by the court to give some general aid to civil litigants can fairly be used to mandate trial courts to supplement the handbook in individual cases as a particular problem arises in the course of actual litigation.

se plaintiff in presenting her case." *Tyree v. Evans,* 728 A.2d 101, 105 (D.C. 1999).[6] But the line can be a delicate one for a trial court in the context of specific litigation. Appellant seeks to have trial court action, discretionary at best, hardened into a rule of law that would compel reversal. We think this goes too far in the circumstances here.

■ Appellant cites us to cases in which courts have recognized special circumstances involving *pro se* litigants that warrant special care by trial courts. In matters involving pleadings, service of process, and timeliness of filings, *pro se* litigants are not always held to the same standards as are applied to lawyers. *Moore, supra,* 994 F.2d at 876; *Thomas v. United States,* 586 A.2d 1228, 1230 (D.C.1991); *Wright v. Wright,* 386 A.2d 1191, 1192 n. 2 (D.C. 1978). What distinguishes this category of cases is the focus on the merely technical, rather than substantive, rules of procedure.

■ A second category of cases in which courts may grant leeway to *pro se* litigants are those in which litigants bring suit under remedial statutes, particularly those involving civil rights, which rely "largely on lay persons, operating without legal assistance, to initiate and litigate administrative and judicial proceedings." *Goodman v. District of Columbia Rental Hous. Comm'n,* 573 A.2d 1293, 1299 (D.C.1990). *See also Karriem v. Gray,* 623 A.2d 112, 114 (D.C.1993); *Johnson–El v. District of Columbia,* 579 A.2d 163, 166 (D.C.1990); *Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972)("Procedural technicalities are particularly inappropriate in such a statutory scheme"); *Coles v. Penny,* 174 U.S.App. D.C. 277, 283, 531 F.2d 609, 615 (1976); *Rubin v. O'Koren,* 621 F.2d 114, 117 (5th Cir.1980).

Further, in the case of incarcerated litigants,

we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed, (internal citations omitted) and have held that some procedural rules must give way because of the unique circumstance of incarceration, *see Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (*pro se* prisoner's notice of appeal deemed filed at time of delivery to prison authorities)

*McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993). *McNeil* involved an incarcerated litigant claiming damages resulting from alleged medical trials performed on prisoners. While acknowledging the procedural allowance historically given prisoner litigants, the Supreme Court nevertheless stated, "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *Id.* Thus, even prisoner litigants are given less leeway in run-of-the-mill civil cases.

Appellant places particular reliance on cases involving summary judgment against *pro se* litigants, which he asserts constitute a distinct category requiring special treatment. However, each case cited by appellant in fact falls within one or more of the categories outlined above, and none of them is comparable to the case at bar. In *Hudson v. Hardy,* 134 U.S.App. D.C. 44, 412 F.2d 1091 (1968),[7] a prisoner brought a *pro se* suit against prison officials alleging cruel and unusual punishment reflecting racial and religious prejudice. The defendants filed a motion to dismiss, or in the alternative for summary judgment, and attached an affidavit showing the basis for the action they had taken. The prisoner did not respond to the motion at all, much less file a counter-affidavit. The court held that before entering summary judgment, the court "should have provided him

---

6. In the very same paragraph, we noted the general principle that "a *pro se* litigant's unrepresented status cannot permit her to escape the burdens imposed by the adversarial system." *Id.*

7. This case is binding on us under *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971).

with fair notice of the requirements of the summary judgment rule." 134 U.S.App. D.C. at 47, 412 F.2d at 1094. The ruling, however, was justified on the basis of a prisoner's peculiarly difficult situation. Noting that "in the ordinary civil case, appellant's failure to reply by affidavit might have warranted the entry of summary judgment against him," the court went on to highlight the prisoner's special situation. "We have recognized, however, that the requirements of the summary judgment rule may not fairly be applied 'with strict literalness' to a prisoner unrepresented by counsel and subject to the 'handicaps ... detention necessarily imposes upon a litigant'.... Appellant has neither the facilities nor has he had the opportunity to provide the documentary evidence that would have been necessary, by ordinary standards, to defeat appellees' motion for summary judgment." *Id.* (citation omitted). Subsequent D.C. Circuit cases have similarly applied the rule in the special context of prisoner litigation or its equivalent. *See Neal v. Kelly,* 295 U.S.App. D.C. 350, 963 F.2d 453, 454–55 (1992); *Ham v. Smith,* 209 U.S.App. D.C. 373, 653 F.2d 628 (1981).[8]

The Ninth Circuit places *Hudson* and its progeny in context and explains the distinction between prisoners and nonprisoners thus:

> It is the element of "choice" which most clearly distinguishes the *pro se* prisoner cases from the suit at bar. The leading "fair notice" prisoner case, *Hudson v. Hardy* ... concluded that an exception

should be made for a prisoner unrepresented by counsel who, because of the "handicaps ... detention necessarily imposes on a litigant" probably would be unable to retain counsel even if he had the financial means to do so. *Hudson* at 1094. The large number of published decisions involving prisoners appearing in forma pauperis support the conclusion that an inmate's choice of self-representation is less than voluntary and, when the unwilling self-representation is coupled with the further obstacles placed in a prisoner's path by his incarceration— for example, his limited access to legal materials, *Moore,* 703 F.2d at 520, and to sources of proof, *Hudson,* 412 F.2d at 1095—it seems appropriate to apply the requirements of the summary judgment rule with less than "strict literalness." *Hudson,* 412 F.2d at 1094.

*Jacobsen v. Filler,* 790 F.2d 1362, 1365 n. 4 (9th Cir.1986).[9]

The only D.C. Circuit case cited by appellant that involves a nonprisoner *pro se* litigant is *Moore, supra.* However, *Moore* dealt with, among other things, a civil rights claim of violations of due process and equal treatment in plaintiff's discharge from the government, an area we have already noted may be treated with greater liberality. Further, the case involved not summary judgment but rather defects in the pleading and service of process, also areas of permissible special consideration in *pro se* cases. As we would construe the opinion, it was in this context that the

---

8. *Hudson, Neal* and *Ham* are further distinguished from the instant case because in each of them, a 12(b)(6) motion to dismiss was treated as a Rule 56 motion for summary judgment. As stated in *Neal,* "under the Rule [12b], the motion is to be disposed of as provided in Rule 56 only after 'all parties [are] ... given reasonable opportunity to present all material pertinent to such a motion by Rule 56.'" *Neal, supra,* 963 F.2d at 455.

9. *See also Martin v. Harrison County Jail,* 975 F.2d 192, 193 (5th Cir.1992); *Brock v. Hendershott,* 840 F.2d 339, 343 (6th Cir.1988). There is contrary authority. For example, in

*Timms v. Frank,* the court believed that "all *pro se* litigants, not just prisoners, are entitled to notice of the consequences of failing to respond to a summary judgment motion" because "the need to answer a summary judgment motion with counter-affidavits is 'contrary to lay intuition.'" 953 F.2d 281, 285 (7th Cir.1992) (quoting *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982)). The same court subsequently acknowledged, however: "To the extent *Merritt* held that 'procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel,' it cannot be considered authoritative after *McNeil.*" *Members v. Paige,* 140 F.3d 699, 702–703 (7th Cir.1998).

appellate court remarked, while citing to the prisoner cases, that the trial court should have given the *pro se* plaintiff minimal notice of pleading requirements and of the consequences of noncompliance.

The case before us presents a far different picture. It involves ordinary civil tort litigation seeking monetary damages. The appellant here was at liberty, he was literate, and he clearly had access to legal materials, as demonstrated by his motions and other submissions throughout discovery. Surely by the time of summary judgment plaintiff in this major civil litigation could fairly be expected to have investigated the rudiments of that proceeding and to have read the text of Rules 26(b)(4) and 56. Appellees' motion papers laid out clearly what was lacking in plaintiff's presentation. Indeed to this day, even on appeal, the substance of his experts' testimony with respect to the standard of care and causation remains something of a mystery.[10] Finally, we cannot shut our eyes to the reality that, as far as this record shows, appellant chose to proceed *pro se.* Even if he could not afford to pay a retainer, appellant was presumably free to seek and retain counsel on a contingency fee basis, as plaintiffs do in most potentially meritorious personal injury cases of this type

Appellant makes much of his comment in the surreply, quoted above in the text at note 4, as indicating his misunderstanding of the pretrial process and summary judgment. He argues that the trial court therefore had a particular duty to enlighten him before ruling on the motion. In fact, the statement as such was not entirely inaccurate, in spite of its argumentative and somewhat rhetorical language. Appellant was correct that he did not have to reveal "every ounce of evidence and strategy." But, as already indicated, this is no reason why he should not have known by this point that he had to make at least a minimal disclosure of the substance of the evidence with which he was to prove his case. Furthermore, the failure of a *pro se* litigant to take some particular step can almost always be ascribed to a misunderstanding of an applicable legal requirement. A litigant's making explicit that which is implicit does not change the fundamentals of our analysis; otherwise, the normal rule of judicial noninterference would be effectively nullified.

Moreover, interference by the court in civil litigation "necessarily implicates the court's impartiality and discriminates against opposing parties who do have counsel." *Jacobsen, supra,* 790 F.2d at 1365 n. 7. As *McNeil* reiterates, "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." 508 U.S. at 113, 113 S.Ct. 1980 (quoting *Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980)). Additionally, "even if a substantive notice requirement were desirable, it should be enacted through formal amendment rather than piecemeal adjudication. Rule 56's separate notice provision (compare Rule 56(c) with Rule 6(d)) and description of summary judgment (compare Rule 56(e) with Rule 12(b)) indicate that the Supreme Court and its Advisory Committee have considered the special problems raised by the summary judgment procedure and ... concluded that the present federal rules ... already apprise litigants of their summary judgment obligations." *Jacobsen, supra,* 790 F.2d at 1366.

---

**10.** No Rule 60 motion for reconsideration followed the court's order, even after appellant acquired counsel in this matter within less than a year after the entry of summary judgment. Whether a party is proceeding *pro se* or with counsel, "in both cases, the remedy to the party injured by his representative's error is to move to reconsider or to set aside; it is not for the trial court to inject itself into the adversary process on behalf of one class of litigant." *Jacobsen v. Filler, supra,* 790 F.2d at 1364–65. *Cf. Dada v. Children's Nat'l Med. Ctr.,* 715 A.2d 904 (D.C.1998) (expert affidavit submitted with motion for reconsideration after grant of summary judgment).

A requirement of active trial court assistance has an open-ended quality to it. As *Jacobsen* points out, if the trial court should have told the *pro se* litigant of the need to file affidavits, then the next step would be that the court must explain what an affidavit is, which in turn impels a rudimentary outline of the rules of evidence, and so forth. "To give that advice would entail the district court's becoming a player in the adversary process rather than remaining its referee." *Id.* at 1366.

Finally, it is appropriate to note the special problem posed by a rule that would reverse trial court decisions for failing to provide special assistance to *pro se* litigants. Ordinarily, for plenary appellate review, a litigant claiming error must have drawn the error to the trial court's attention so that it could have been corrected without the need for an appeal.[11] If this is not done, we will review, at best, only for "plain error." Requirements that in a given situation a trial court has a mandatory duty, on pain of reversal, to assist a *pro se* litigant requires action *sua sponte* by the trial court in favor of one party to litigation. We think we must be wary in proceeding down untrod paths in this area of the law. The circumstances here, considered as a whole, warrant no such action.

*Affirmed.*