**Randall R. READE, Appellant,**

v.

**Justis SARADJI, Appellee.**

**No. 09–CV–479.**

District of Columbia Court of Appeals.

Submitted April 13, 2010.

Decided May 6, 2010.

Randall R. Reade, pro se.

Before FERREN, TERRY, and SCHWELB, Senior Judges.

FERREN, Senior Judge:

*Pro se* plaintiff Randall Reade appeals the trial court's "Order Denying Plaintiff's Motion to Amend Complaint and for Summary Judgment, and Dismissing Complaint *Sua Sponte.*" Fundamentally, the case concerns Reade's failure to file timely and legally sufficient proof of service of process pursuant to Super. Ct. Civ. R. 4(*l*), (m). We agree with the trial court that Reade's Affidavit of Service by Process Server was legally defective because it failed to comply with the strictures of Super. Ct. Civ. R. 4(*l*)(1). Thus, the trial court did not err in denying Reade a default upon his filing this affidavit. Given the special circumstances of this case, however, including Reade's status as a *pro se* plaintiff, we agree with Reade that the trial court abused its discretion by dismissing Reade's complaint (1) without apprising him of the reasons why the Affidavit of Service was defective; (2) without informing him how to cure the defect to avoid dismissal of his complaint; and (3) without taking into proper account the Superior Court Clerk's earlier grant of an extension of time to accomplish service of process ten days later than the trial court ordered

dismissal. We therefore reverse the order of dismissal and remand the case for further proceedings.

## I.

On April 23, 2007, Reade filed a complaint in the Small Claims and Conciliation Branch of the Civil Division of the Superior Court to recover $4,955 allegedly owed by Justis Saradji, a former tenant. The case was dismissed without prejudice for improper service of process. Reade refiled, but the case was again dismissed without prejudice for failure to properly serve the defendant. Reade refiled a third time on October 10, 2008 in the Civil Division of the Superior Court, requesting $39,764 from Saradji to cover a loan, back rent, the cost of cleaning the apartment, and the cost of hiring a private investigator to locate and serve the defendant. Reade made numerous attempts to serve Saradji with a summons and the complaint, but he ultimately failed, allegedly because of Saradji's successful efforts to avoid service of process.

On December 10, 2008, allegedly as a result of Saradji's elusive behavior, Reade filed a motion for an extension of time to serve process, which the trial court granted the next day, December 11. The court noted that Super Ct. Civ. R. 4(m) requires a plaintiff to file an affidavit establishing service of process within sixty days of filing the complaint, and that Reade had not filed a timely affidavit. The court observed, however, that although Rule 4(m) required dismissal of the case for that reason, Super. Ct. Civ. R. 41(b) authorizes the court to vacate such a dismissal "upon a showing of good cause why the case should not be dismissed." The court determined that under the circumstances Reade had shown good cause, and it reactivated the complaint giving him an additional sixty days, until February 9, 2009,

within which to file a Rule 4(l) affidavit or to file another motion seeking additional time.

On December 17, 2008 Reade filed a motion for special service of process by a United States Marshal, a deputy Marshal, or other specially appointed person pursuant to Super. Ct. Civ. R. 4(c)(2). The trial court denied this request the next day, December 18, finding that Reade "has a good, current address" for Saradji and "can arrange for a process server to serve Defendant when he is leaving his home, walking down his front door step, or entering his car." The court warned Reade that if he needed additional time to serve Saradji, he should file a second motion for extension "no later than February 9, 2009."

Reade proffers in his brief that a private investigator he hired was finally able to serve Saradji on December 25, 2008 by leaving a copy of the summons and complaint with Bobbie Saradji, his stepmother, who lived with Saradji. He adds that the investigator made a recording of the conversation he had had with Ms. Saradji. On January 29, 2009, Reade filed an Affidavit of Service by Process Server in an effort to comply with Super. Ct. Civ. R. 4(l). The affidavit indicated that "a copy of the Summons, Complaint and Initial Order [were left at Saradji's] place of abode or business at 42nd Avenue, Glenn Burnie, MD with Bobbie Saradji[,] a person of approximately ____ years of age who stated that he/she resides therein with the defendant." As the blank space indicates, the process server did not include Ms. Saradji's approximate age in the affidavit.

In the meantime, on December 31, 2008 the case had been transferred from Judge Beck to Judge Long to conduct a hearing Judge Beck had scheduled for March 6, 2009. Four days before the hearing, how-

ever, on March 2, the Clerk of the court, *sua sponte,* denied Reade a default against Saradji pursuant to Super. Ct. Civ. R. 55(a),[1] because "[s]ervice does not clearly indicate that the person served on behalf of the defendant is authorized under [Super. Ct. Civ. R.] 4(*l*)(1)." The Clerk's written notice gave Reade until April 6, 2009 to respond to the March 2 order, and warned him that "[f]ailure to respond by the date shown will result in dismissal." The following day, March 3, Reade filed a motion to amend his complaint to claim "further expenses." He also filed another motion asking for summary judgment, stating that Saradji had been "properly served with a Summons on December 25, 2008," and that he had "failed to file an Answer within the statutory 20 days" and thus had "forfeited this case."

The court held the hearing on March 6, 2009 but failed to acknowledge the Clerk's March 2 denial of default and extension of time to April 6 to cure defective service. Nor did the court advert to Reade's March 3 motion for summary judgment.[2] A review of the transcript of the March 6 hearing suggests that the court was unaware of the Clerk's order and Reade's motion. Instead, the court mentioned Judge Beck's December 18, 2008 order denying Reade's motion for special service of process, to which Reade responded that

he "did file and serve [Saradji] at the end of December," and that his private investigator had "filed an affidavit of that, I think, [on] January 27th." Reade then expressed his belief that service was "complete." At this point, the court suggested that Reade file another "motion referring to [the] affidavit of service, whatever it was you filed, to prove that you served the person, and then the court will act on that and we'll proceed further." The court set a status hearing for May 1, 2009 for "ex parte proof of damages where you come in and give sworn statements about the exact amount of money you are owed."

On March 27, 2009, three weeks after the hearing, the trial court ruled on Reade's March 3 motions and issued the order now on appeal. In that order, the court denied Reade's motion to amend the complaint to claim "further expenses," indicating that such relief would be "entirely premature." The court then denied Reade's motion for summary judgment, construing it as a motion for entry of a default.

> On its face, the Affidavit [of Service] is legally defective ... because the person who executed the Affidavit ... failed to specify the age of the person to whom he gave the Summons and Complaint at the defendant's residence ... [and]

1. Super. Ct. Civ. R. 55(a) provides:
   (a) *Entry.* When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these Rules, the Clerk or the Court shall enter the party's default. Any order of default entered *sua sponte,* including a default for failure to respond to the complaint within the time prescribed in Rule 12(a), shall not take effect until fourteen (14) days after the date on which it is docketed and shall be vacated upon the granting of a motion filed by defendant within such 14 day period showing good cause why the default should not be entered. Before an order of default is issued, the time to plead

or otherwise defend may be extended by one of the following:
   (1) An order granting a motion which shows good cause for such an extension.
   (2) A praecipe, signed by the plaintiff(s) and defendant(s) in question or their attorneys of record and filed with the Court, which provides for a one-time extension of not more than 20 days within which to plead or otherwise respond.

2. Reade called the court's attention to his March 3 motion to amend the complaint to claim "further expenses," but the court informally rebuffed the motion.

failed also to explain other required information about the individual.

The court explained that, under Super. Ct. Civ. R. 4(e)(2), when the process server leaves court papers with someone other than the defendant, that person must be "'of suitable age and discretion.'" The court added that the affidavit must provide "at least two specific kinds of descriptive information: the person's age and a description of the person's status that would imply a level of reliability in relaying court papers, such as 'spouse.'" Further, said the court, the March 3 motion was not a proper response to the Clerk's March 2 order because it did not explain why the Affidavit of Service was not defective or attempt to file an amended Affidavit. The court then dismissed the case *sua sponte*, noting that "if the Clerk of the court had noticed that no legally sufficient service had been completed prior to February 9, 2009, the Clerk would have been required to dismiss the case immediately pursuant to Super. Ct. Civ. R. 4(m)," the instant motion would have been moot, and dismissal "was inevitable."

## II.

### A.

■ We address, first, Reade's contention that he properly served Saradji. In its March 27 order, the trial court found that the process server's affidavit was legally insufficient because it did not include a statement of the age and status of Ms. Saradji (the recipient of process on behalf of the defendant). Super. Ct. Civ. R. 4(*l*)(1). We agree that, on its face, the affidavit does not set out facts from which the trial court could discern that Ms. Saradji met "the appropriate qualifications for receipt of process set out in subdivision[ ] (e)," [3] namely, that she is "of suitable age and discretion" to receive process and deliver it to the defendant.[4]

### B.

■ That does not end the matter, however, for had Reade been given an opportunity at the March 6 hearing (or otherwise), he might have been able to demonstrate "good cause why his case should not be dismissed." Super. Ct. Civ. R. 41(b). The question, then, is whether this lost opportunity is legally assignable to Reade or instead was the responsibility of the trial court, such that Reade must be given another chance to perfect service of process.

*First,* Reade asserts that the recipient of the summons and complaint, Bobbie Saradji, is the defendant's stepmother, who is middle aged and lived with the defendant at the time he was served. He stresses that the process server had made a recording of his conversation with Ms. Saradji, that the server had been present at the March 6 hearing, and that he could therefore have testified at that time about Ms. Saradji's age and discretion or filed "an amended Affidavit with any further information the Court would require." He

3. Super. Ct. Civ. R. 4(*l*)(1).

4. Super. Ct. Civ. R. 4(e). Reade argues that "Rule 4(*l*) does *not* require that an age, approximate or accurate, [of the recipient of process] be listed in the Affidavit," and that the trial court is creating a new requirement not listed in the rule. Although the rule does not require the affidavit to state the recipient's age, it does require the affidavit to contain "specific facts" which demonstrate that the recipient was of suitable age and discretion. Super. Ct. Civ. R. 4(e), (*l*). Reade's affidavit omitted not only the recipient's approximate age, but also any facts from which the court could determine that she was of appropriate age and discretion to receive process and deliver it to the defendant. The recipient's name, standing alone, fails to meet the proof of service requirements of Rule 4.

therefore contends that the court should have notified him of the defects in the affidavit at the hearing on March 6 and given him an opportunity to amend it at that time, rather than order him to file another motion for default as a condition of going forward.

*Second,* Reade notes that the Clerk's order in any event gave him until April 6 to file a proper affidavit of service, a period ending ten days *after* the court-ordered dismissal. He therefore argues that the court could not precipitously erase that timetable, especially because he "was not aware that [the process server's affidavit] was in any way defective until the Order of March 27 was issued."

*Finally,* understanding the court's March 27 order to have dismissed his complaint with prejudice, Reade proffers that from Judge Beck's order of December 11, 2008 dismissing then reinstating his complaint, he *understood that any dismissal for defective service of process would be without prejudice.* He therefore urges us, in the event we find the server's affidavit defective, to remand the case to allow additional evidence to prove that service had been sufficient, or at the least to order dismissal of the complaint without prejudice, in order to allow still further attempts to serve Saradji.

We agree in general with Reade's first two contentions and need not reach the third.

### C.

As to the trial court's alleged failures at the March 6 hearing to notify Reade of the defects in the Affidavit of Service and to give him an opportunity to amend it to avoid dismissal, we note again Reade's status as a *pro se* litigant and inquire into the extent of the trial court's obligation, if any, to provide him assistance in understand-ing, selecting, and implementing the legal options available to him.

With reference to civil litigants, we have said that "[a]lthough a plaintiff has the right to proceed *pro se,* such a litigant can expect no special treatment from the court." *West v. Morris,* 711 A.2d 1269, 1272 n. 3 (D.C.1998) (quoting *Abell v. Wang,* 697 A.2d 796, 804 (D.C.1997)). Moreover, unlike a *pro se* prisoner, who cannot afford counsel—and with whom the courts are procedurally more lenient, *see West,* 711 A.2d at 1272 n. 3—Reade is not indigent; indeed, he claims to have spent a significant amount of money on this case in his efforts to serve Saradji. On the other hand, this case began as a matter in the Small Claims branch of the court, where *pro se* litigation is commonplace, indeed encouraged. It therefore was probably not unreasonable of Reade, in shifting his cause to the Civil Division to recover the increasing damages allegedly due, to continue representing himself. Furthermore, Reade's contentions directed at the trial court's handling of his case allegedly concern trial court actions reflecting abdication of the court's own responsibilities, without regard to slippage by Reade himself in divining the ins and outs of court rules on service.

Finally, this case concerns the question of trial court responsibility to *pro se* litigants in a single, narrow, but complicated area of civil litigation: service of process. In this particular regard, we agree with the approach announced by the U.S. Court of Appeals for the District of Columbia Circuit in *Moore v. Agency for International Development,* 301 U.S.App.D.C. 327, 994 F.2d 874 (1993), which reversed the District Court's dismissal of a *pro se* litigant's complaint for ineffective service of process, and remanded the case to give him an opportunity to perfect service.

The court opined that "[p]ro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings," and emphasized the "importance of providing pro se litigants with the necessary knowledge to participate effectively in the trial process." *Id.* at 876. To that end, trial courts must "give the pro se litigant at least minimal notice" of the court's "pleading requirements." *Id.* at 877. The court must also give "minimal notice of the consequences of not complying with the procedural rules," because "[m]ere time [to correct a defect] is not enough, if knowledge of the consequences of not making use of it is wanting." *Id.* at 876 (citations and quotation marks omitted). *Accord Hilska v. Jones,* 217 F.R.D. 16, 22 (D.D.C.2003) (citing *Moore* in denying motion to dismiss for "failure to demonstrate proper service on defendant" by *pro se* plaintiff).

In this case, Reade did not receive his due from the trial court. At the March 6 hearing, the court learned from Reade that Judge Beck had extended the time for filing service of process, that Reade's complaint had been served, and that the defendant had not responded. It is not clear why the court was unaware of the Clerk's March 2 order finding deficiency in service and extending Reade's deadline for accomplishing it to April 6. Whatever the reason, however, the court was responsible for knowing all the official records in Reade's case at the time of the hearing. *See* Super. Ct. Civ. R. 16(b) (trial judge required to "ascertain the status of the case" at initial scheduling conference); *cf. Coulter v. Gerald Family Care P.C.,* 964 A.2d 170, 200 (D.C.2009) (noting that trial court must be "adequately apprised" of discovery record before ruling on motion to preclude witness testimony). It should not be fatal to Reade's case that he failed to

inform the court about them; in fact, it is not even clear whether Reade had received the Clerk's March 2 order in the mail before that hearing. Accordingly, the trial court's ruling that Reade should file another default motion was beside the point. On imputed notice of the Clerk's March 2 order premised on the Affidavit of Service that Reade had filed, the trial court was obliged to take note of the Affidavit, inform Reade as to how it must be cured to comply with court rules, and—given the process server's availability—facilitate that cure promptly. *See generally Moore; Hilska.*

### D.

Next, we take up Reade's argument that the March 27 dismissal was premature, not only because he had been denied an opportunity to cure any defect in service of process but also because of the Clerk's March 2 order extending his time for perfecting service to April 6.

By the time it ruled on March 27, the trial court was aware of the Clerk's order as well as Reade's March 3 motion for summary judgment. As to the latter, it rejected Reade's motion (recharacterized by the court as a motion for entry of default) because it did "not attempt to explain why the Affidavit was not actually defective." The court further faulted Reade because he had not sought "leave to file an Amended Affidavit." The problem is, neither the Clerk nor the trial court had ever explained to this *pro se* plaintiff why the affidavit was defective, or given him an opportunity to cure it by amendment, even though the March 6 hearing would have been the appropriate time to resolve that issue based on the Clerk's and Reade's filings.[5]

5. When the trial court, on March 6, gave

Reade an opportunity to file another motion

As to the Clerk's March 2 order, the trial court held it, in legal effect, *ultra vires*. In its order of March 27, the trial court premised dismissal of Reade's complaint on Judge Beck's order of December 11, 2008 requiring Reade to file proof of service by February 9, 2009 (unless he filed a motion for a further extension). The ground for dismissal, therefore, was failure to comply with the timing requirements of Rule 4(m), not with the later, April 6 deadline established by the Clerk's order of March 2. Moreover, the court's dismissal theory based on Judge Beck's order was an about-face; it was entirely at odds with the court's own rulings at the March 6 hearing inviting Reade to file another default motion and appear at a May 1 hearing to take ex parte proof of damages.

The court wrote that the Clerk had overlooked Reade's legally insufficient service by the February 9, 2009 deadline set by Judge Beck, and thus had been required "to dismiss the case immediately pursuant to Super. Ct. Civ. R. 4(m)." But of course the Clerk had *not* overlooked the insufficiency of service. As stated in the Clerk's March 2 order: "Service does not clearly indicate what the person served on behalf of the defendant is authorized under [Super. Ct. Civ. R.] 4(*l*)(1)." The Clerk then implicitly exercised discretion in the way that Judge Beck had on December 11, simultaneously dismissing then reinstating Reade's complaint and granting him time to complete service properly. We need not evaluate the propriety of the Clerk's

actions in entering such orders;[6] suffice it to say that Reade had learned from two sources—the trial court on March 6 and the Clerk of court either just before or just after that date—that his case was alive, at least until April 6.[7] The trial court should not have ruled otherwise. Under these circumstances, therefore, we agree the trial court's dismissal of Reade's complaint must be considered a nullity.

### E.

Because we conclude that the trial court abused its discretion in dismissing Reade's complaint for the reasons elaborated above, we need not consider whether the dismissal was with, or without, prejudice. We therefore reverse and remand for further proceedings, ordering the trial court to afford Reade an opportunity to cure his Affidavit of Service and thus put him in a position to seek a default judgment if defendant-appellee Saradji does not answer or otherwise respond. In the alternative, if circumstances do not permit Reade to cure the Affidavit of Service on file, the trial court shall afford him an opportunity, consistent with Superior Court rules and this opinion, to effect service of process anew based on the same complaint.

*So ordered.*

---

for default "referring to [the] affidavit of service, whatever it was you filed," the court implied that only Reade's motion was inadequate, not that the process server's affidavit was defective.

**6.** *See supra* note 1.

**7.** Although the court urged Reade on March 6 to file another default motion "quickly," it did

not mention a deadline. In fact, by setting the hearing for *ex parte* proof of damages for May 1, almost two months later, the court implied a somewhat relaxed understanding of "quickly." In any event, within days after March 6, if not before that date, Reade had in hand the Clerk's order giving him until April 6 to complete service of process.