Abigail PADOU, et al., Appellants,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 09–CV–390.

District of Columbia Court of Appeals.

Argued May 18, 2010.
Decided June 17, 2010.

Don Padou, with whom Abigail Padou was on the brief, pro se.

David A. Hyden, Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellee.

Carl Messineo and Mara Verheyden–Hilliard, Washington, DC, filed a brief for amicus curiae the Partnership for Civil Justice Fund and the National Lawyers Guild, in support of appellants.

Before REID and KRAMER, Associate Judges, and NEBEKER, Senior Judge.

REID, Associate Judge:

Appellants, Abigail and Don Padou, acting *pro se,* filed an amended complaint alleging, in part, that the District violated

their First Amendment constitutional rights by selectively removing their posters from utility poles or public lampposts. We are constrained to reverse the trial court's grant of summary judgment in favor of the District, and we remand this case with instructions to afford the parties an opportunity to conduct discovery, followed by further proceedings (dispositive motions or trial).

## FACTUAL SUMMARY

As the record reveals, the events which led to the filing of a complaint against the District by the Padous commenced in the year 2007. In that year, according to the Padous' complaint, the District of Columbia Department of Transportation released its "streetscape" study of the Brookland area of the city. One of the recommendations of the study was that above-ground utility power lines be buried, apparently for aesthetic reasons, and to safeguard and preserve trees. Because the District allegedly did not implement the recommendation, even though funds allegedly were available for the Brookland project, the Padous and other residents "form[ed] an ad hoc community group called 'Leave the Trees,'" and they planned a rally for August 23, 2008, which would criticize the District's failure to bury power lines on a main corridor of the Brookland area. The Padous paid for "approximately 400 posters to inform residents about the … political rally." The posters were attached to utility poles on August 16, 2008, but a District government worker removed them on August 18, on the ground that they did not comply with applicable District of Columbia regulations.[1] The Padous and oth-

---

1. An employee of the District's Department of Public Works ("DPW") sent an e-mail to Brookland residents explaining that the signs were removed because they violated 24 DCMR §§ 108.7, 108.10, and 108.11.

At the time that the signs were removed, 24 DCMR §§ 108.5 and 108.6 (2007) specified:
A sign, advertisement, or poster shall not be affixed for more than sixty (60) days, except the following:
 (a) Signs, advertisements, and posters of individuals seeking political office in the District who have met the requirements of § 210 of the D.C. Campaign Finance Reform and Conflict of Interest Act (D.C.Code § 1–1420 (1981)); and
 (b) Signs designed to aid in neighborhood protection from crime shall be exempt from the sixty (60) day time period.
108.6 Political campaign literature materials shall be removed no later than thirty (30) days following the general election.
On November 6, 2009, the District of Columbia Department of Transportation ("DOT") published a notice of emergency and proposed rulemaking, which modified §§ 108.5 and 108.6; no changes were proposed to any of the other subsections comprising § 108, 56 D.C.Reg. 8759 (2009), and DOT issued a notice of final rulemaking adopting the proposed changes on January 8,

2010, 57 D.C.Reg. 528 (2010). Thus, the regulations at 24 DCMR § 108 (2010) currently provide:
24–108. SIGNS, POSTERS, AND PLACARDS.
108.1 No person shall affix a sign, advertisement, or poster to any public lamppost or appurtenances of a lamppost, except as provided in accordance with this section.
108.2 The placing of any advertisement on any tree in public space is prohibited.
108.3 No poster or placard shall be publicly displayed or exhibited if it is lewd, indecent, or vulgar, or if it pictorially represents the commission of or the attempt to commit any crime.
108.4 Any sign, advertisement, or poster that does not relate to the sale of goods or services may be affixed on public lampposts or appurtenances of a lamppost, subject to the restrictions set forth in this section.
108.5 A sign, advertisement, or poster not related to a specific event shall be affixed for no more than sixty (60) days.
108.6 A sign, advertisement, or poster related to a specific event may be affixed any time prior to the event but shall be removed no later than thirty (30) days following the event to which it is related.

ers associated with Leave the Trees put up new posters on August 19 and 20. About two hundred residents attended the rally.

In their amended complaint, which was filed on December 4, 2008, the Padous alleged two causes of action, only one of which pertains to this appeal.[2] Count One of the Complaint alleges a constitutional First Amendment violation, as reflected in part, by the following paragraphs:

23. The removal of the posters by the District through its agency DPW was selective and based solely on the content of the posters. The only posters removed were those hung by Leave the Trees announcing the rally. DPW did not remove posters hung on the same poles by commercial entities. None of the commercial posters examined by Plaintiffs included contact information, the date posted, or evidence of filing with the Mayor of the District of Columbia.

24. The District's enforcement of 24 DCMR § 108 through its agency DPW was arbitrary and amounted to an infringement of Plaintiffs' right of freedom of speech guaranteed by the First Amendment to the Constitution of the United States.

25. DPW and its director ... willfully violated Plaintiffs' right to freedom of speech guaranteed by the First Amendment to the Constitution of the United States.

26. 24 DCMR § 108 unreasonably and impermissibly burdens speech and as such is an unconstitutional regulation of speech.

These paragraphs may be read to allege both an "as applied" and a facial First Amendment challenge to 24 DCMR § 108; that is, as applied to the Padous, § 108 is unconstitutional, and the statute is unconstitutional on its face. As relief, the Padous requested, in part, that the trial court:

1. Declare Defendants' actions in tearing down posters announcing the Leave the Trees rally to be unconstitutional.

2. Award Plaintiffs damages to cover the cost of printing posters and for the willful violation of Plaintiffs' constitutional rights.

3. Declare 24 DCMR § 108 to be unconstitutional.

The case proceeded at a rapid pace in the trial court. The Padous moved for a preliminary injunction on January 5, 2009, which the District opposed. The injunction request was designed to stop con-

---

108.7 Each sign, advertisement, or poster shall contain the date upon which it was initially affixed to a lamppost.
108.8 Each sign, advertisement, or poster shall be affixed securely to avoid being torn or disengaged by normal weather conditions.
108.9 Signs, advertisements, and posters shall not be affixed by adhesives that prevent their complete removal from the fixture, or that do damage to the fixture.
108.10 No more than three (3) versions or copies of each sign, advertisement, or poster shall be affixed on one (1) side of a street within one (1) block.
108.11 Within twenty-four (24) hours of posting each sign, advertisement, or poster, two (2) copies of the material shall be filed with an agent of the District of Columbia so designated by the Mayor. The filing shall include the name, address, and telephone number of the originator of the sign, advertisement, or poster.
108.12 For purposes of this section, a "public lamppost" is any public post erected for the purpose of supporting electric wires.

2. Count Two, which is not the subject of this appeal, alleged the District's non-compliance with emergency legislation, enacted by the Council of the District of Columbia; the emergency legislation required the Mayor to bury specified utility lines in the Brookland area.

struction on the Brookland streetscape project until the issue about the power lines had been resolved. While the injunction request was still pending, the District lodged a motion to dismiss the amended complaint or, alternatively, for summary judgment, on January 28, 2009.[3] Evidentiary hearings on the Padous' preliminary injunction request took place on February 4 and 5, 2009.[4] The trial court orally denied the requested injunctive relief at the end of the hearing.

After receiving a short extension of time in which to file their pleading, the Padous submitted their opposition to the District's motion to dismiss or, alternatively for summary judgment, on February 18, 2009.[5] While the opposition memorandum of points and authorities stated that the District's motion should be disposed of as a motion for summary judgment, it also emphasized that there were material facts in dispute and contended that "it is inappropriate to grant a motion for summary judgment before the non-moving party has had a chance to conduct discovery," including discovery pertaining to the Padous' contention that "24 DCMR § 108 is unconstitutional as applied." The memorandum further asserted that the parties "have not even appeared before the court for the initial status hearing set for March 13, 2009." In addition, Mr. Padou's declaration stated that "[b]ecause of time pressures associated with preparing for the preliminary injunction hearing, [he had] been unable to conduct any discovery in connection with . . . count one, violation of freedom of speech." He added that "[t]here has not been sufficient time to schedule deposition of Defendant's employees." The District's reply, filed on March 2, 2009, argued in part, that the Padous presented no valid constitutional challenge to § 108, that discovery was unnecessary because no material facts were in dispute, and that the District government employee's declaration established that "there was no discrimination by Defendants in removing Leave the Trees' posters, and, in fact, Leave the Trees' posters were not the only posters removed [on August 18]."

The trial court released its order granting the District's alternative motion for summary judgment on March 9, 2009. The court apparently first considered the Padous' argument that 24 DCMR § 108 is facially invalid under the First Amendment; as the court stated the Padous' argument: "Plaintiffs . . . assert that the entire regulation is unconstitutional because 'it lacks clear and objective criteria for its administration' and, consequently, permits 'unbridled discretion.'" After specifying that the Padous' argument focused on §§ 108.3 and 108.5, the court declared: "Even assuming that subsections 108.3 and 108.5 impose content-based restrictions, the plaintiffs suffered no injury under those subsections—simply put, the plaintiffs have no standing to invoke those provisions."

Furthermore, the trial court interpreted the Padous' First Amendment selective enforcement claim as an equal protection

---

3. The motion was accompanied by a memorandum of points and authorities, a statement of uncontested material facts, the declaration of the District government employee who removed the posters on August 18, 2008, as well as an exhibit (the employee's poster removal log).

4. Mr. Padou, acting *pro se*, presented the testimony of four witnesses, including that of his wife, as well as documentary evidence, and closing argument.

5. The Padous also filed a memorandum of points and authorities, a statement of material facts still in dispute, the declarations of Mr. Padou and Michael F. Galvin (a tree expert), as well as a few documents.

claim, rather than as a First Amendment contention that, as applied to them, § 108 is unconstitutional. As the court stated, in part:

> The plaintiffs also argue that the District has selectively enforced the regulation. . . .
>
> In essence, the plaintiffs are making a claim of selective enforcement under the equal protection clause. . . . However, the plaintiffs have failed to allege that the regulation is being enforced against them based on their race, national origin, religion or other impermissible basis. . . .

## ANALYSIS

### The Arguments of the Parties

In essence, the Padous' claim that they did not have an opportunity to develop their "as applied" First Amendment argument in the trial court, that is, the argument that (1) "the District was impermissibly motivated by disagreement with the critical content of the Padou posters when the District tore those posters down"; and hence, (2) "the District . . . selectively enforce[d] its posting regulation because it tore down all posters critical of District policies and did not tear down all posters that were not critical of District policies, even when those posters were hung on the same utility poles and violated the posting regulation." They claim that the trial court "did not address the issue of the adequacy of discovery," which they had raised in their opposition to the District's alternative motion for summary judgment and in Mr. Padou's Declaration. They complain that they did not have sufficient time to conduct discovery relevant to their "as applied" First Amendment constitutional claim. They maintain that, as *pro se* litigants, they "were confused about the operation of Super. Ct. Civ. R. 56(f)," but the trial court "provided no

notice about the deficiency in [their] declaration nor about how to properly invoke the provision." Consequently, they "are forced to infer that their declaration was somehow deficient." They contend that the trial court "abused its discretion in granting summary judgment against [them] without providing proper notice about the consequences and operation of the summary judgment rules." With respect to the trial court's decision on their facial invalidity challenge to § 108, the Padous mainly argue that "[s]ince the regulation's restriction on protected speech is both substantial and real, the entire regulation is overbroad and, therefore, unconstitutional."

The District contends that § 108 constitutes a reasonable, time, place, or manner regulation under the First Amendment, and the District emphasizes the failure of the Padous to comply with 24 DCMR §§ 108.7, 108.10, and 108.11. Furthermore, the District attempts to defend its employees against the Padous' "as applied" First Amendment argument (involving selective enforcement), by claiming that "the Padous offered only purely speculative allegations of malfeasance by the District government to support this 'claim'—allegations which were disproven by the District—and [the Padous] did not come close to proving it." In addition, the District dismisses the Padous' complaints that they did not have sufficient time to conduct discovery and that the trial court did not give them notice regarding the operation of the summary judgment rules. The District further contends that the Padous' Rule 56(f) showing of need for discovery was deficient in that "the Padous failed to state their need for discovery with enough specificity to satisfy" our case law.

### The Applicable Legal Principles

 First Amendment rights are fundamental, although not absolute; the

Amendment signals that "debate on public issues should be uninhibited, robust, and wide open...." *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). " '[The] government may make reasonable regulations, unrelated to the content of the message, concerning the time, place, and manner of the exercise of [First Amendment] liberties.' " *Carson v. United States,* 419 A.2d 996, 998–99 (D.C.1980) (quoting *Leiss v. United States,* 364 A.2d 803, 807 (D.C. 1976)); *see also Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). Where First Amendment issues are involved, this court "must make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." *Bloch v. District of Columbia,* 863 A.2d 845, 850 (D.C.2004) (referencing *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 17, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990) (internal quotation marks and other citations omitted)). "Once the constitutional issue is properly raised, the burden is upon the government to establish the constitutional validity of the restriction." *Id.* (citations omitted).

We review the grant or denial of a summary judgment motion *de novo. See Guilford Transp. Indus. v. Wilner,* 760 A.2d 580, 591 (D.C.2000). "[T]o be entitled to summary judgment, [the moving party] must demonstrate that there is no genuine issue of material fact and that [it is] entitled to judgment as a matter of law." *Id.* at 592 (citing Super. Ct. Civ. R. 56(c)) (other citation omitted; alteration in original). "[T]he papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated." *Fry v. Diamond Constr., Inc.,* 659 A.2d 241, 246 (D.C.1995) (internal quotation marks and citations omitted). However, "mere con-

clusory allegations [or denials] by the nonmoving party are legally insufficient to avoid the entry of summary judgment." *Joyner v. Sibley Mem'l Hosp.,* 826 A.2d 362, 368 (D.C.2003).

In cases where a party is a *pro se* litigant, "the general principle [is] that 'such a litigant can expect no special treatment from the court.' " *MacLeod v. Georgetown Univ. Med. Ctr.,* 736 A.2d 977, 979 (D.C.1999) (quoting *Abell v. Wang,* 697 A.2d 796, 804 (D.C.1997)). A *pro se* litigant cannot "expect or seek concessions because of ... inexperience and lack of trial knowledge and training and must, when acting as [his] [or her] own lawyer, be bound by and conform to the rules of court procedure ... equally binding upon members of the bar." *Id.* (internal quotation marks and citations omitted; second brackets added). Nevertheless, we have followed the District of Columbia Circuit in requiring trial judges to exercise special care with a *pro se* litigant in special circumstances. Thus, in *MacLeod,* we declared that "[i]n matters involving pleadings, service of process, and timeliness of filings, *pro se* litigants are not always held to the same standards as are applied to lawyers." *Id.* at 980 (referencing *Moore v. Agency for Int'l Dev.,* 301 U.S.App.D.C. 327, 329, 994 F.2d 874, 876 (1993)) (other citations omitted). Indeed, the trial court has a "responsibility to inform *pro se* litigants of procedural rules and the consequences of noncompliance," including "at least minimal notice ... of pleading requirements." *Berkley v. D.C. Transit, Inc.,* 950 A.2d 749, 756–57 n. 12 (D.C.2008) (referencing *Moore, supra,* 301 U.S.App. D.C. at 329, 994 F.2d at 876). And, as we recently stated, the court in *Moore* "opined that '[p]ro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings,' and [the court] em-

phasized the 'importance of providing *pro se* litigants with the necessary knowledge to participate effectively in the trial process.' " *Reade v. Saradji*, 994 A.2d 368, 373 (D.C.2010) (quoting *Moore, supra*, 301 U.S.App. D.C. at 329, 994 F.2d at 876) (alteration in original).

## Discussion

Here, the trial court first turned to the facial validity of 24 DCMR § 108 which, as pled and argued by the Padous, involves the First Amendment overbreadth doctrine.[6] However, traditional Supreme Court practice, in the First Amendment context, requires a court to first consider an "as applied" challenge. As Justice Alito explained in his dissenting opinion in *United States v. Stevens*, —— U.S. ——, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010):

> The "strong medicine" of overbreadth invalidation need not and generally should not be administered when the statute under attack is unconstitutional as applied to the challenger before the court. As we said in [*Board of Trs. of State Univ. of N.Y. v.*] *Fox*, [492 U.S. 469,] 484–85 [109 S.Ct. 3028, 106 L.Ed.2d 388 (1989) ], "[i]t is not the usual judicial practice, . . . nor do we consider it generally desirable, to proceed to an overbreadth issue unnecessarily— that is, before it is determined that the

statute [or regulation] would be valid as applied."

*Id.* at ——, 130 S.Ct. at 1593–94, 176 L.Ed.2d at 454 (Alito, J., dissenting) (fourth alteration in original). Thus, a First Amendment "question of overbreadth [should be considered] only as a last resort." *Id.* (footnote omitted). Significantly, then, in this case the trial court should have focused first on the Padous' "as applied" argument. In their opposition to the District's alternative motion for summary judgment the Padous explicitly stated, "24 DCMR is unconstitutional as applied."

The trial court inadvertently interpreted the Padous' argument as one falling under the Equal Protection Clause of the Fourteenth Amendment (rather than the First Amendment) and the court concluded there was no basis for an equal protection contention. Hence, the court did not focus on the procedural issue relating both to the lack of a meaningful opportunity for discovery and the Padous' status as *pro se* litigants.

Even for experienced plaintiffs' attorneys, the pace of the litigation here afforded little or no opportunity for discovery prior to a response to a motion to dismiss or, alternatively, for summary judgment. The Padous filed their motion for a preliminary injunction on January 5, 2009. While they were preparing for the eviden-

---

**6.** The trial court did not decide the merits of the facial validity question because it concluded that the Padous had no standing to challenge 24 DCMR §§ 108.3 and 108.5. However, the Court has declared that "an individual whose own speech or conduct may be prohibited is permitted to challenge a statute on its face 'because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid.' " *Board of Airport Comm'rs of the City of Los Angeles v. Jews for Jesus,*

*Inc.*, 482 U.S. 569, 574, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987); *see also Hill v. Colorado*, 530 U.S. 703, 731–32, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000) ("the overbreadth doctrine enables litigants 'to challenge a statute [or regulation], not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's [or the regulation's] very existence may cause others not before the court to refrain from constitutionally protected speech or expression.' ") (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)).

tiary hearings pertaining to their injunctive relief request—indeed, on the eve of those hearings—the District filed its dispositive motion (January 28, 2009). Evidentiary hearings on the Padous' motion for an injunction occurred on February 4 and 5, 2009, and the time for the Padous' to file their opposition to the District's dispositive motion was fast approaching.

At the conclusion of the first day of evidentiary hearings on the motion for a preliminary motion, Mr. Padou asked the court for an extension of time to respond to the District's motion. Because the judge had previously alerted the parties to a pressing commitment at the conclusion of the day's hearing, the trial judge responded that she would address the request the following day. At the end of the second day of hearings, and following the judge's oral order denying the motion for an injunction, the trial court recalled Mr. Padou's request. However, Mr. Padou had approached the District and reached agreement that the Padous would have until February 18, 2009, to respond to the District's motion and the District's reply would be due on March 1. The trial court approved the agreement.

■ The judge undoubtedly believed that the Padous had conducted themselves well during the evidentiary hearings, telling Mr. Padou: "I was very impressed with your presentation, and it's hard to believe that you're not a lawyer. So thank you very much for the fine job you did." Nevertheless, the Padous were *pro se* litigants who did not have legal degrees, and they were about to confront the District's pivotal dispositive motion which would require the Padous to file a responsive pleading addressing both a motion to dismiss their amended complaint, and an alternative motion for summary judgment, all within approximately two weeks, without the benefit of discovery or a status confer-

ence. This was a "special circumstance" requiring "special care" under *MacLeod, Moore,* and *Reade, supra.* Since the matter concerned a pleading and the timeliness of the Padous' responsive filing, our case law instructs that the trial court should have given "at least minimal notice . . . of pleading requirements," *Berkley,* 950 A.2d at 756 n. 12 (internal quotation marks and citation omitted), thus recognizing and emphasizing the "importance of providing *pro se* litigants with the necessary knowledge to participate effectively in the trial process," *Reade,* 994 A.2d at 373 (internal quotation marks and citation omitted).

■ While the trial court could not give the Padous substantive assistance in the preparation of their responsive pleading, it could and should have discussed procedural matters relating to the alternative motion for summary judgment, including the fact that in rendering a decision on a summary judgment motion, the trial court examines "pleadings, depositions, answers to interrogatories, and admissions." Super. Ct. Civ. R. 56(c). This may have elicited from the Padous what they tried to explain in their opposition and in Mr. Padou's declaration—that not only had no status conference taken place, but also more significantly, that the Padous had not had a chance to seek discovery from the District and to question the District's employees, including the employee who had removed their posters. This discovery was critical to the Padous' "as applied" First Amendment argument since the District claimed that there was no material fact in dispute largely because of the declaration from the government employee who had removed the Padous' posters, but not others which allegedly did not comply with 24 DCMR § 108.7. Because Super. Ct. Civ. R. 26(b)(1) provides that "[p]arties may obtain discovery regarding any mat-

ter, not privileged, that is relevant to the claim or defense of any party," the Padous were entitled to seek discovery from the District pertaining to their "as applied" First Amendment claim. In short, the Padous were entitled to a fair summary judgment process, including the "safeguards" of Rules 56 and 26. *See Embassy of Pakistan, IIS v. Lenkin Co. Mgmt.*, 996 A.2d 817, 819 (D.C.2010) (quoting *Tompkins v. Washington Hosp. Ctr.*, 433 A.2d 1093, 1099 (D.C.1981)) ("An opposition to a summary judgment motion often requires extensive preparation of both legal and factual arguments as well as affidavits. . . .").

Contrary to the District's arguments, the Padous' pleadings fairly raised their "as applied" argument; indeed, the opposition to the District's dispositive motion explicitly stated "24 DCMR 108 is unconstitutional as applied" and paragraph 23 of the amended complaint alleged facts pertinent to an "as applied" First Amendment argument. Moreover, Mr. Padou's declaration (filed with the Padous' opposition to the District's motion) expressly raised the discovery issue, stating: "Because of time pressures associated with preparing for the preliminary injunction hearing, I have been unable to conduct any discovery in connection with our count one, violation of freedom of speech. There has not been sufficient time to schedule deposition of Defendant's employees." The District claims that these statements are insufficient, in part because the Padous have not "demonstrate[d] precisely how additional discovery will lead to a genuine issue of material fact." *Travelers Indem. Co. v. United Food & Commercial Workers Int'l Union*, 770 A.2d 978, 994 (D.C.2001) (quoting *Ben Ezra, Weinstein, & Co. Inc. v. America Online, Inc.*, 206 F.3d 980, 987 (10th Cir.2000)). We conclude that the Padous sufficiently informed both the trial court and the District that the deposi-

tion(s) of District government workers was designed to demonstrate how the District interfered with their core speech under the First Amendment by selectively taking down posters that announced a rally at which there would be criticism of District policies governing the burial of overhead power lines. At any rate, "[p ]ro se litigants are allowed more latitude than litigants represented by counsel to correct defects in ... pleadings." *Reade*, 994 A.2d at 373 (citation omitted) (alteration in original).

Accordingly, for the foregoing reasons, we are constrained to reverse the trial court's grant of summary judgment in favor of the District, and we remand this case with instructions to afford the parties an opportunity to conduct discovery, followed by further proceedings (dispositive motions or trial).

*So ordered.*