Don **PADOU**, et al., Appellants,

v.

**DISTRICT OF COLUMBIA**, Appellee.

No. 12–CV–51.

District of Columbia Court of Appeals.

Submitted June 4, 2013.

Decided Oct. 3, 2013.

---

Don Padou and Abigail Padou, pro se.

Irvin B. Nathan, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, Donna M. Murasky, Deputy Solicitor General, and James C. McKay, Jr., Senior Assistant Attorney General, were on the brief for appellee.

Before FISHER and EASTERLY, Associate Judges, and Farrell, Senior Judge.

EASTERLY, Associate Judge:

Don and Abigail Padou posted a large number of signs advertising for an upcoming community rally on utility poles and public lampposts in their Brookland neighborhood. District officials removed the signs, citing non-compliance with three subsections of 24 DCMR § 108 (2012) (regulating the posting of "signs, posters and placards"). The Padous sued the District of Columbia, alleging that, both as applied to them and on its face, the regulation violated the First Amendment. The trial court (Hon. Judith E. Retchin) granted the District summary judgment, but this court in *Padou v. District of Columbia*, 998 A.2d 286 (D.C.2010) ("*Padou I* ") reversed. On remand, the Padous abandoned their as-applied challenge and the trial court (Hon. Craig Iscoe)[1] dismissed the remainder of the Padous' case on standing and mootness grounds, thereby obviating a merits ruling on their facial challenges to § 108. The Padous appealed this ruling, and again we reverse.

Although we agree with the trial court that the Padous did not have standing to litigate facial challenges either to § 108 as a whole or as to particular subsections of § 108 that were never applied to them, the Padous did have standing to challenge

---

1. All references to the trial court prior to *Padou I* are references to Judge Retchin; all references to the trial court after this court remanded in *Padou I* are references to Judge Iscoe.

those subsections that the District asserted they had violated: §§ 108.7, 108.10, and 108.11. Moreover, the Padous' challenges to these three provisions were not rendered moot by amendments to other subsections of the statute. Therefore, the trial court should have ruled on the merits of the Padous' arguments that (1) §§ 108.7, 108.10, and 108.11 are not permissible time, place, and manner restrictions on speech (factoring in, with respect to § 108.11, the right to speak with anonymity), and (2) § 108.10 is unconstitutionally vague. We remand a second time so that the Superior Court can consider the merits of these claims.

### I. Facts and Procedural History[2]

The Padous are part of a group called "Leave the Trees" that was formed to lobby the District to bury utility lines in Brookland. In August 2008, the Padous created approximately 400 posters advertising a rally at which they would advocate their cause, and they hung them on utility poles and public lampposts along 12th Street, N.E. Some of the signs said, "Leave the Trees"; others said, "This pole could be a tree." Each of the signs advertised the upcoming rally. Two days after the Padous posted the signs, the District removed them because the signs failed to comply with three subsections of 24 DCMR § 108.

Specifically, the District informed the Padous that the signs were removed because they failed to comply with 24 DCMR § 108.7, which requires each sign to contain the date upon which it was initially posted; 24 DCMR § 108.10, stating that "[n]o more than three ... versions or copies of each sign" may be posted on one side of the street on a single block; and 24 DCMR § 108.11, requiring that copies of the signs and identifying and contact information for the "originator of the sign" be filed with the District.[3] The Padous ad-

---

2. For purposes of this appeal we consider the allegations in the complaint as well as information elicited in discovery and subsequent pleadings that is relevant to the trial court's dismissal ruling. *See Matthews v. Automated Bus. Sys. & Servs., Inc.,* 558 A.2d 1175, 1179 (D.C.1989) (authorizing consideration of evidence submitted by the parties in resolving a 12(b)(1) motion). Although the trial court "was not obliged to accept any of [the Padous'] allegations as true [and] was free to decide for itself whether it had jurisdiction based on the evidence presented by the parties," *id.,* we do not discern in this case any dispute about the material facts related to the court's procedural rulings on standing and mootness.

3. These three provisions have remained unchanged during the pendency of the Padous' litigation, but as discussed in more detail below, see *infra* note 5, other subsections have been amended since the Padous first filed suit. The complete text of 24 DCMR § 108, as currently drafted, is:

108.1 No person shall affix a sign, advertisement, or poster to any public lamppost

or appurtenances of a lamppost, except as provided in accordance with this section.
108.2 The placing of any advertisement on any tree in public space is prohibited.
108.3 No poster or placard shall be publicly displayed or exhibited if it is lewd, indecent, or vulgar, or if it pictorially represents the commission of or the attempt to commit any crime.
108.4 Any sign, advertisement, or poster that does not relate to the sale of goods or services may be affixed on public lampposts or appurtenances of a lamppost, subject to the restrictions set forth in this section.
108.5 A sign, advertisement, or poster shall be affixed for no more than one hundred eighty (180) days.
108.6 A sign, advertisement, or poster related to a specific event shall be removed no later than thirty (30) days following the event to which it is related. This subsection does not extend the time limit in subsection 108.5.
108.7 Each sign, advertisement, or poster shall contain the date upon which it was initially affixed to a lamppost.
108.8 Each sign, advertisement, or poster shall be affixed securely to avoid being torn

mitted both that the posting date was not on the signs and that they did not file copies of their posters (with or without identifying and contact information) with the District within 24 hours of posting the signs. The Padous stated in their complaint that they hung 400 posters, but they did not indicate how many city blocks they covered. Abigail Padou apparently also said in her deposition that the Padous "probably" hung more than three posters per block.[4] Two days after the signs were removed, the Padous hung new signs.

The Padous sued the District, alleging that 24 DCMR § 108 violated the First Amendment. Seemingly challenging the regulation as a whole, the Padous asserted that it was "questionable" whether the regulation was content-based or content-neutral, but that it was facially unconstitutional either way. The Padous also alleged that the law was unconstitutional as applied because it was selectively enforced against them.

After minimal discovery, the trial court granted the District's motion for summary judgment, ruling that the Padous did not have standing to challenge any subsections of § 108 other than those that had been applied to them (§§ 108.7, 108.10, and 108.11), and denying the Padous' facial challenge to those provisions. The trial court also denied the Padous' selective enforcement challenge.

This court reviewed the order granting summary judgment in *Padou I*. We focused on the Padous' selective enforcement claim, and held that the trial court incorrectly construed this claim as an equal protection challenge, rather than an as-applied challenge under the First Amendment. *Padou I*, 998 A.2d at 293. We also held that the Padous, as *pro se* litigants, were not given sufficient time in discovery to develop this claim. *See id.* at 293–94. We did not address the disposition of the Padous' facial challenges to 24 DCMR § 108, except to note that "traditional Supreme Court practice . . . requires a court to first consider an 'as applied' challenge" before turning to any facial challenges. *Id.* at 293. Nonetheless, we reversed the entirety of the summary judgment order and remanded "with instructions to afford the parties an opportunity to conduct discovery, followed by further proceedings (dispositive motions or trial)." *Id.* at 295.

On remand, after conducting discovery, the Padous conceded their selective enforcement claim against the District. Although they abandoned their as-applied challenge, the Padous moved for summary

or disengaged by normal weather conditions.

108.9 Signs, advertisements, and posters shall not be affixed by adhesives that prevent their complete removal from the fixture, or that do damage to the fixture.

108.10 No more than three (3) versions or copies of each sign, advertisement, or poster shall be affixed on one (1) side of a street within one (1) block.

108.11 Within twenty-four (24) hours of posting each sign, advertisement, or poster, two (2) copies of the material shall be filed with an agent of the District of Columbia so designated by the Mayor. The filing shall include the name, address, and telephone number of the originator of the sign, adver-

tisement, or poster, and if the sign is for an event, the date of the event.

108.12 For purposes of this section, a "public lamppost" is any public post erected for the purpose of supporting electric wires.

108.13 For purposes of this section, the term "event" refers to an occurrence, happening, activity or series of activities, specific to an identifiable time and place, if referenced on the poster itself or reasonably determined from all circumstances by the inspector.

24 DCMR § 108.

4. This information comes from the District's Motion for Summary Judgment. The Padous' depositions are not part of the record.

judgment on their facial challenges, which now encompassed a challenge to § 108.10 on vagueness grounds and a challenge to § 108.11 based on their right to speak with anonymity. In response, the District defended against all of the Padous' facial challenges and cross-moved for summary judgment. Specifically, the District argued that the Padous did not have standing to challenge sections of the regulation that did not apply to them; the provisions were constitutional time, place, and manner restrictions; § 108.11 was not an unconstitutional restriction on anonymous speech; and § 108.10 was not unconstitutionally vague.

The trial court did not reach the merits of either the Padous' or the District's summary judgment motions. Instead, the court ruled that both summary judgment motions were moot because 24 DCMR § 108 had been amended.[5] The District then moved to dismiss the case, and the trial court granted that request. After noting both that the Padous had waived their as-applied challenge and that it had previously ruled that the Padous' facial challenges were moot, the trial court ruled that the "remaining challenges to the regulation fail because the Plaintiffs no longer have standing" given that the Padous "have not alleged that they suffered personal injury under the amended regulation." Because the trial court concluded that none of the Padous' claims were live, it granted the District's motion to dismiss. This appeal followed.

## II. Analysis

■ We review de novo the trial court's ruling dismissing the case. *Potomac Dev. Corp. v. District of Columbia,* 28 A.3d 531, 543 (D.C.2011). Given that the Padous have abandoned their as-applied challenge to 24 DCMR § 108, the correctness of the trial court's ruling turns on whether the Padous' facial challenges were properly resolved. In particular, we must consider whether the trial court's standing and mootness rulings were correct, and we likewise review de novo these questions of law. *See Lewis v. District of Columbia Dep't of Motor Vehicles,* 987 A.2d 1134, 1138 (D.C.2010) (standing); *N St. Follies Ltd. P'ship v. District of Columbia Bd. of Zoning Adjustment,* 949 A.2d 584, 589 (D.C.2008) (mootness).

We begin by addressing the Padous' standing to sue. Without distinguishing between the particular subsections of 24 DCMR § 108, the trial court held that the Padous lacked standing to challenge any part of that regulation. We hold that the Padous did have standing to challenge the subsections under which they alleged injury: §§ 108.7, 108.10, and 108.11.

■ "The question of standing 'involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Bennett v. Spear,* 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (quoting *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45

---

5. While the litigation was pending, the Council of the District of Columbia twice amended 24 DCMR §§ 108.5 and 108.6. At the time the Padous' signs were taken down by the District, §§ 108.5 and 108.6 required all signs to be removed after 60 days unless they were related to individuals seeking political office or were designed to aid neighborhood protection from crime. In January 2010, these provisions were amended to require posters not relating to a specific event be removed within

60 days of posting and posters relating to a specific event be removed within 30 days of the event. Then, in January 2012, these provisions were amended again to require that all posters be removed within 180 days of posting, and, in addition, posters related to a specific event be removed within 30 days of the event. At that time, the District Council also added § 108.13, defining the term "event." 24 DCMR § 108 (2012) (noting amendments of the regulation).

L.Ed.2d 343 (1975)).[6] "The irreducible constitutional minimum of standing" requires a plaintiff to show "an injury in fact," i.e., "that the party seeking review be himself among the injured," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 563, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); in addition a plaintiff must show that this "injury 'fairly can be traced to the challenged action'" and that this injury "'is likely to be redressed by a favorable decision.'" *Id.* at 560, 112 S.Ct. 2130. "Beyond the constitutional requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Most notably, a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* at 474, 102 S.Ct. 752 (quoting *Warth*, 422 U.S. at 499, 95 S.Ct. 2197).

The Padous' posters were taken down because they violated three subsections of 24 DCMR § 108: § 108.7, requiring the date of posting; § 108.10, allowing no more than three signs on each side of a block; and § 108.11, requiring that the signs be registered with the District. These were the specific subsections the Padous cited in their amended complaint, and these were the subsections with which the Padous admittedly did not—or, with respect to § 108.10, "probably" did not—comply. Because the Padous sufficiently alleged that they suffered injury under these subsections and that injury is likely to be redressed if their constitutional challenges succeed, the Padous have standing to challenge these subsections. *See, e.g.,*

*Members of the City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 803, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (stating that the plaintiffs, whose posters were removed for violating a city ordinance, "certainly have standing to challenge the application of the ordinance to their own expressive activities"); *Lujan*, 504 U.S. at 561–62, 112 S.Ct. 2130 (noting that when the plaintiff is "an object of the action ... at issue," such as an enforcement action, "there is ordinarily little question that the action ... has caused him injury, and that a judgment preventing ... the action will redress it").

█ The Padous argue that they have standing to challenge the whole of § 108, but we cannot agree. They never disputed the District's claim that the sole reason their signs were removed was because of their non-compliance with §§ 108.7, 108.10, and 108.11, and they never alleged any facts or presented any evidence indicating that they were injured under any other subsection of § 108 referenced in their pleadings. Specifically, they never alleged that their signs were removed because the signs were lewd or depicted the commission of a crime (§ 108.3), because the signs related to the sale of goods or services (§ 108.4), or because the signs were not removed in a timely fashion (§ 108.5 & 6).

█ Moreover, the Padous' standing to challenge §§ 108.7, 108.10, and 108.11 did not afford them standing to challenge any and all of the subsections of § 108. Standing to challenge certain provisions of a regulation "does not provide [the plaintiff] a passport to explore the constitutionality of every provision." *Covenant Media of S.C., LLC v. City of N.*

6. "Although Congress did not establish this court under Article III of the Constitution, we generally adhere to the case and controversy requirement of Article III as well as pruden- tial principles of standing." *Riverside Hosp. v. District of Columbia Dep't of Health*, 944 A.2d 1098, 1103–04 (D.C.2008) (citing *Speyer v. Barry*, 588 A.2d 1147, 1160 (D.C.1991)).

*Charleston,* 493 F.3d 421, 429 (4th Cir. 2007). Rather, "a plaintiff must establish that he has standing to challenge each provision of an ordinance by showing that he was injured by application of those provisions." *Id.* at 430 (citing *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 230, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)); *see also Prime Media, Inc. v. City of Brentwood,* 485 F.3d 343, 350 (6th Cir.2007) (noting that a proper challenge to one provision of a regulation "does not magically carry over to allow [a plaintiff] to litigate other independent provisions of the [regulation] without a separate showing of an actual injury under those provisions").

 Finally, we note that the doctrine of overbreadth, an exception to the prudential standing rule referenced in *Padou I,* 998 A.2d at 293, does not relieve the Padous of their burden of meeting constitutional standing requirements and thus does not assist the Padous in establishing standing to challenge § 108 more broadly. To take advantage of the overbreadth doctrine, a plaintiff must still demonstrate "injury in fact," *i.e.,* that he was within a circle of individuals adversely impacted by the statute or regulation in question—or at least that he has "an actual and well founded fear that [the statute or regulation] will be enforced against [him]." *See Va. v. Am. Booksellers Ass'n,* 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988); *see also Sec'y of State of Md. v. Joseph H. Munson Co.,* 467 U.S. 947, 958, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) (acknowledging that, in determining standing under the overbreadth doctrine, a "crucial issue[ ]" is whether a plaintiff "satisfies the requirement of 'injury-in-fact,' "); *Prime Media, Inc.,* 485 F.3d at 349 ("[T]he injury in fact requirement still applies to overbreadth claims under the First Amendment."); *CAMP Legal Def. Fund, Inc. v. City of Atlanta,* 451 F.3d 1257, 1270 (11th

Cir.2006) ("The overbreadth doctrine does not relieve a plaintiff of the burden to prove constitutional standing."). The only component of standing the overbreadth doctrine relieves a plaintiff of showing is that his own conduct—the conduct that is limited by the statute or regulation—is protected under the First Amendment: "Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Padou I,* 998 A.2d at 293 n. 6 (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). As explained above, the Padous have never alleged or presented any evidence that they suffered an injury under other provisions of the regulation beyond §§ 108.7, 108.10, and 108.11 or reasonably feared other provisions of § 108 (for example those concerning commercial or lewd speech) might be applied to them. Accordingly, they cannot rely on the overbreadth doctrine to establish their standing to challenge other provisions of § 108.

 The alternative rationale for the trial court's dismissal order was that the Padous' challenge to § 108 was moot in light of recent amendments to the regulations. Again, the failure to distinguish between specific provisions of § 108—in this case, those that were amended and those that were not—led to faulty analysis. " 'A case is moot when the legal issues presented are no longer 'live' or when the parties lack a legally cognizable interest in the outcome.' " *Thorn v. Walker,* 912 A.2d 1192, 1195 (D.C.2006) (quoting *Cropp v. Williams,* 841 A.2d 328, 330 (D.C.2004)). Only §§ 108.5 and 108.6 were amended, and these amendments did nothing to disturb the Padous' legally cognizable interest

in the outcome of their challenge to §§ 108.7, 108.10, and 108.11. Because §§ 108.7, 108.10, and 108.11 have remained unaltered during the pendency of this litigation, the constitutionality of these provisions is just as much in question now as it was when the Padous brought their suit. Thus, the merits of the Padous' challenges to these provisions were properly before the trial court.[7]

Remand for factual findings and legal rulings on the merits of the Padous' facial challenges to §§ 108.7, 108.10, and 108.11 is thus required. On remand, the trial court need not address the Padous' argument that § 108 as a whole is an impermissible content-based restriction on speech. As noted above, the Padous do not have standing to challenge § 108 as a whole, nor do they have standing to challenge the specific subsections—§§ 108.3, 108.4, 108.5, and 108.6—that they assert are content-based. The Padous only have standing to challenge §§ 108.7, 108.10, and 108.11, and they have never asserted that these particular subsections are content-based.

The trial court must determine, however, whether §§ 108.7, 108.10, and 108.11 are permissible time, place, and manner restrictions,[8] *see Taxpayers for Vincent,* 466 U.S. at 805, 808, 812, 104 S.Ct. 2118 and whether § 108.11 in particular is a permissible time, place, and manner restriction or a violation of the right to anonymous speech.[9] The trial court must also

---

7. Not only are the Padous' declaratory relief claims not moot, but their claim for compensatory damages is also live. The trial court determined that the Padous did not have a viable claim for damages in connection with their facial challenge because they had not alleged that they were "damaged by the enactment of the unconstitutional statute." But *Daskalea v. Washington Humane Soc'y,* 710 F.Supp.2d 32 (D.D.C.2010), the case relied on by the trial court in reaching this conclusion, is inapposite. In *Daskalea,* the plaintiffs asserted a statute was facially unconstitutional on due process grounds. While the litigation was pending, the statute was amended and the plaintiffs made "no allegation that the pre-amendment provisions 'continue[d] to have any residual effect.'" *Id.* at 40 (quoting *Nat'l Black Police Ass'n v. District of Columbia,* 108 F.3d 346, 350 (D.C.Cir.1997)). As we explained above, the Padous' challenges were not mooted by the amendment to the regulation in this case. Moreover, the court's observation in *Daskalea* that the plaintiffs could not circumvent a determination that their facial challenges on due process grounds were moot by showing that they were damaged by the enactment of the predecessor statute was qualified by the observation that damages claims could be maintained under other circumstances—"for example, where a plaintiff alleges the enactment of a statute by itself ... has violated the First Amendment." 710 F.Supp.2d at 43.

8. After this court in *Padou I* remanded the case to the trial court, the Padous argued that neither Judge Retchin nor this court had ever reached their facial challenges to §§ 108.7, 108.10, and 108.11. We conclude otherwise. Judge Retchin did address these claims in her order granting the District summary judgment. Moreover, although the District's counter assertion on remand that "the Court of Appeals did not question" Judge Retchin's denial of the Padous' facial challenges to §§ 108.7, 108.10, and 108.11 is technically correct, the fact remains that this court in *Padou I* then reversed the entirety of Judge Retchin's summary judgment order, thereby vacating her ruling on the Padous' facial challenges.

There is no explanation in *Padou I* as to why reversal of the entire summary judgment order was deemed appropriate, although there is some indication that the panel determined that it was premature for the trial court to rule on the Padous' facial challenges before it ruled on their as-applied challenges. *See* 998 A.2d at 293. In any event, the order in which the trial court should consider the Padous' constitutional claims is no longer a concern now that the Padous have abandoned their as-applied challenge.

9. *See Talley v. California,* 362 U.S. 60, 64, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960) (acknowledging the right to speak anonymously); *Solers, Inc. v. Doe,* 977 A.2d 941, 951 (D.C.2009)

determine whether the reference to "versions or copies" in § 108.10 is unconstitutionally vague. *See FCC v. Fox Television Stations, Inc.,* —— U.S. ——, 132 S.Ct. 2307, 2317, 183 L.Ed.2d 234 (2012).[10]

For the foregoing reasons, the judgment of the trial court is reversed and we remand for proceedings consistent with this opinion.

*So ordered.*

(same); *see, e.g., Bloedorn v. Grube,* 631 F.3d 1218, 1239 (11th Cir.2011) (evaluating restrictions on this right); *Am. Constitutional Law Found. v. Meyer,* 120 F.3d 1092, 1099 (10th Cir.1997) (same) *aff'd sub nom. Buckley v. Am. Constitutional Law Found., Inc.,* 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999).

10. If the trial court were to determine that any of these subsections is unconstitutional, it must then determine what remedy is appropriate. "[W]e try not to nullify more of a legislature's work than is necessary, for we know that 'a ruling of unconstitutionality frustrates the intent of the elected representatives of the people.'" *Ayotte v. Planned Parenthood of N. New England,* 546 U.S. 320, 328–30, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006) (noting that a court may enjoin only the unconstitutional applications of the regulation, sever an unconstitutional provision from the rest of the regulation, or invalidate the entire regulation if the legislature's intent cannot be realized without the unconstitutional provision); *see also Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves,* 601 F.2d 809, 822 (5th Cir. 1979) ("[I]f we believe that the ordinance's vagueness can be cured by a reasonable construction, we can ... refrain from invalidating it."); *Act Now to Stop War & End Racism Coal. v. District of Columbia,* 905 F.Supp.2d 317, 354–55 (D.D.C.2012) (severing unconstitutional portion of the regulation).