*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 13-CV-999

EQUAL RIGHTS CENTER, APPELLANT,

v.

PROPERTIES INTERNATIONAL,

and

ERNEST BANKS, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAB-1356-13)

(Hon. Michael L. Rankin, Trial Judge)

(Argued May 8, 2014            Decided February 26, 2015)

*Peter D. Isakoff*, with whom *Gary A. Coad* and *Adam B. Banks* were on the brief, for appellant. *Megan K. Whyte de Vasquez* and *Robert M. Bruskin*, Washington Lawyers' Committee for Civil Rights and Urban Affairs, were also on the brief for appellant.

*Deborah Murrell Whelihan* for appellees.

Before FISHER and MCLEESE, *Associate Judges*, and PRYOR, *Senior Judge*.

PER CURIAM: Appellant Equal Rights Center (ERC), a non-profit advocacy organization, filed a complaint against appellees Ernest Banks and Properties

International, alleging a violation of the District of Columbia Human Rights Act (DCHRA), D.C. Code §§ 2-1401.01 to 2-1404.04 (2012 Repl.). The trial court dismissed the complaint, concluding that appellant lacked standing to bring the claim. We reverse and remand for further proceedings consistent with this opinion.

## I.    Factual Background

Appellant ERC describes itself as "a national non-profit civil rights organization . . . [which] works nationally to promote equal opportunity in housing, employment, and access to public accommodations and government services for all protected classes under federal, state, and local laws." It provides "guidance, information, and assistance" to protect individuals seeking housing in the Washington, D.C., area, and offers training for the real estate industry on fair housing law.

Appellant also investigates alleged housing discrimination, in part by tracking real estate listings, which led it to a listing appellees placed on the Metropolitan Regional Information Systems (MRIS) website. The listing advertised an apartment for $934.00 in monthly rent and contained the following language: "Section 8 and other vouchers or certificates [will require] additional

cost." This language, as the trial court explained, violates the DCHRA's prohibition against discrimination based on source of income.

Properties International is a property management, maintenance, and real-estate leasing firm, and Ernest Banks is the owner of, and a broker for, Properties International. Appellees "admit that as a business, they currently manage, care for[,] and offer for lease the property referenced in" the complaint.

ERC alleged that, after discovering the listing, it sent two certified letters; one to appellee Banks and another to appellee Properties International. Its intent in sending the letters was "to inform [appellees] of their unlawful conduct, to educate them on their responsibilities under the DCHRA, and to seek their cooperation in collaborating with the ERC to address their discriminatory conduct." In an attempt to negotiate a settlement, appellant prepared a draft agreement in which appellant demanded that all employees of Properties International "be required to complete a fair housing training course . . . [for a sum of money] to be invoiced by the ERC and paid by Properties International." The parties failed to reach an agreement, and on February 15, 2013, appellant filed suit in the Superior Court under the DCHRA.

ERC's complaint alleged that appellees had injured it by "interfering with its mission, efforts, and programs that are intended to bring about equality of opportunity in housing." To counteract appellees' unlawful action, ERC asserted, it had "committed scarce resources, including substantial staff time, to identify complainants, investigate the extent of defendants' discriminatory actions, engage in an education and outreach campaign, and develop and disseminate educational materials." Appellees' actions "have frustrated and continue to frustrate the ERC's mission and purpose," and required ERC "to divert resources from other planned anti-discrimination programs involving education, outreach, and testing" to respond to appellees' listing. ERC further alleged appellees' actions would continue to injure it in numerous ways.

Appellant sought the following relief: (1) a declaration that appellees violated D.C. Code § 2-1402.21 (2012) by engaging in discrimination based on source of income, (2) an injunction preventing appellees from charging discriminatory rates or advertising that they do so and ordering appellees to undertake "such remedial actions as are necessary to ameliorate [their] past illegal discriminatory conduct," (3) monetary damages, (4) attorneys' fees, and (5) punitive damages.

On April 17, 2013, appellees filed a motion for judgment on the pleadings pursuant to Super. Ct. Civ. R. 12 (c). About a month later, they filed a "Motion for Consolidation," asking that their Rule 12 (c) motion be treated as a motion for summary judgment. In doing so, appellees noted that they relied on various documents attached to their answer and to the motion for judgment on the pleadings.[1]

The trial court heard oral arguments on the pending motions, but the record is bereft of any indication that it was treating appellees' motion as one for summary judgment. Nor did it conduct an evidentiary hearing. During a July 26, 2013, scheduling conference, the trial court dismissed the complaint for lack of standing, concluding that appellant had failed to plead sufficient injury in fact. The trial court reasoned that under *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977), ERC had not been injured in any substantial way. We discuss the court's ruling in more detail below.

---

[1] They pointed out that Super. Ct. Civ. R. 12 (c) provides: "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

Appellant ERC contends the trial court erred in dismissing its complaint for want of standing, arguing that the trial judge "impermissibly made factual findings at odds with the allegations in the Complaint" and improperly grounded its analysis on the *Village of Arlington Heights* decision.

## II.    Pleading Requirements Under Rule 8 (a)

Our jurisdiction requires that a complaint contain:  "(1) a short and plain statement of the grounds upon which the Court's jurisdiction depends . . . , (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks."  Super. Ct. Civ. R. 8 (a).    Historically, we have identified ourselves as a notice pleading jurisdiction, *see Taylor v. District of Columbia Water & Sewer Auth.*, 957 A.2d 45, 50 (D.C. 2008), but we have adopted the pleading standard articulated by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *See Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 544 (D.C. 2011).  "To survive a Rule 12 (b)(6) or 12(c) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Grimes v. District of Columbia*, 89 A.3d 107, 112 (D.C. 2014) (internal quotation marks omitted).

At the pleading stage, plaintiff's burden in pleading injury is not onerous. *Grayson v. AT & T Corp.*, 15 A.3d 219, 245-46 (D.C. 2011) (en banc); *Equal Rights Ctr. v. Post Props.*, 633 F.3d 1136, 1141 n.3 (D.C. Cir. 2011).  We have held that "a complaint that contains 'general factual allegations of injury resulting from the defendant's conduct may suffice[.]'" *Grayson*, 15 A.3d at 245 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  The sufficiency of such allegations of injury must be tested against the case law defining injury in fact. *Grayson*, 15 A.3d at 246.

We review *de novo* the dismissal of a complaint for lack of standing.  *Padou v. District of Columbia*, 77 A.3d 383, 388 (D.C. 2013).  Like the trial court, we accept the factual allegations in the complaint as true and draw all inferences from those factual allegations in the plaintiff's favor.  *Grayson*, 15 A.3d at 228.  The court may not consider matters outside the pleadings unless it treats the motion as one for summary judgment.  *Grimes*, 89 A.3d at 111.

## III.   Standing for Individuals and Organizations

"'Standing is a threshold jurisdictional question which must be addressed prior to and independent[ly] of the merits of any party's claim.'"  *W.H. v. D.W.*, 78

A.3d 327, 337 (D.C. 2013) (quoting *Grayson*, 15 A.3d at 229). It is generally required that a party seeking to bring a claim must allege ". . . a personal stake in the outcome of the controversy" as to "justify exercise of the court's remedial powers on his behalf." *W.H.*, 78 A.3d at 337 (quoting *Grayson*, 15 A.3d at 229 n.19 (quotation marks omitted)). A party has such a "personal stake" only if: (1) he or she has suffered "injury in fact"—an actual or imminent, concrete and particularized, invasion of a legally protected interest; (2) the injury is "fairly . . . trace[able]" to defendant's challenged actions; and (3) it is "likely . . . the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (quotation marks omitted); *see also Padou*, 77 A.3d at 389. The redressability condition implies that plaintiff's injuries may give it standing to seek certain types of relief but not others. For example, allegations of past injury may give a plaintiff standing to seek damages, but a plaintiff seeking forward-looking relief, such as an injunction, must allege facts showing that the injunction is necessary to prevent injury otherwise likely to happen in the future. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *see also Fair Emp't Council of Greater Washington v. BMC Mktg. Corp.*, 28 F.3d 1268, 1272 (D.C. Cir. 1994).

Appellant is an organization, and organizations, like individuals, have legally protected interests. An organization may file suit in its own right "so long

as it satisfies the constitutional requirements and prudential prerequisites of traditional standing analysis." *D.C. Appleseed Ctr. for Law & Justice v. District of Columbia Dep't of Ins., Sec., & Banking*, 54 A.3d 1188, 1205-06 (D.C. 2012) (footnote omitted). We have recognized, several times, that the DCHRA presents no additional prudential barriers.[2] *See Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 732-33 (D.C. 2000); *see also Molovinsky v. Fair Emp't Council*, 683 A.2d 142, 146 (D.C. 1996).

However, an organization's mere interest in a problem or its opposition to an unlawful practice is not sufficient to demonstrate injury in fact, *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972), nor is a simple setback to an organization's abstract social interests. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *see also D.C. Appleseed Ctr.*, 54 A.3d at 1207. "[T]he question of standing turns on whether the organization's activities in pursuit of [its] mission have been affected in a sufficiently specific manner as to warrant judicial intervention." *D.C. Appleseed Ctr.*, 54 A.3d at 1206. This requires a showing that the defendant's unlawful actions have caused a "concrete and demonstrable injury

---

[2] We note that the Supreme Court has recently said that "prudential standing is a misnomer[,]" at least as applied to the zone-of-interest inquiry. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1384 (2014). We need not discuss the implications of this statement, however, as the DCHRA is co-extensive with standing under Article III, and we reverse on grounds other than prudential standing.

to the organization's activities—with the consequent drain on the organization's resources." *Havens Realty Corp.*, 455 U.S. at 379. Generally, when an organization is forced to divert resources to counteract the effects of another's unlawful acts, it has suffered a sufficiently concrete injury to bestow standing. *Id.*; *Equal Rights Ctr. v. Post Props.*, 633 F.3d at 1142.

The District of Columbia Circuit has "'applied *Havens Realty* to justify organizational standing in a wide range of circumstances.'" *Am. Soc'y for the Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011) (quoting *Abigail Alliance for Better Access to Developmental Drugs v. Von Eschenbach*, 469 F.3d 129, 133 (D.C. Cir. 2006)). We, too, have applied *Havens Realty*, holding on several occasions that organizations have standing to challenge unlawful practices they oppose, provided the practices burden them in a sufficiently specific way. *See, e.g.*, *D.C. Appleseed Ctr.*, 54 A.3d at 1208 (legal center had standing under DCAPA to petition for review of an agency decision that would force it to "devote significant additional resources to advocate on behalf of" low income residents facing significant unmet healthcare needs); *Molovinsky*, 683 A.2d at 147 (organization able to establish standing by showing defendant's conduct required it to increase counseling of sex discrimination victims and increase educational efforts "to counteract the negative message, sent to the public

by" defendant's sexual harassment); *see also Executive Sandwich Shoppe, Inc.*, 749 A.2d at 733.[3]

## IV.    Dismissal of the Complaint

This brings us to the crux of the appeal:  did the trial court properly dismiss appellant's complaint for lack of standing?  We conclude the trial court erred, and reverse for the following reasons.

The trial court concluded that appellant's complaint failed to plead injury in fact and, arguably, failed to show that a favorable ruling would redress harm suffered by appellant.  First, the court explained that, in responding to appellees' listing, appellant was "simply doing what you do.  That's not an injury.  If you weren't doing that you wouldn't have any existence."  Second, the trial court did

_____

[3]    The D.C. Circuit has held, and we have acknowledged, that "there are 'two important limitations on the scope of standing under *Havens*.'" *D.C. Appleseed Ctr.*, 54 A.3d at 1209 (quoting *Am. Soc'y for the Prevention of Cruelty to Animals*, 659 F.3d at 25).  First, there must be "'direct conflict between the defendant's conduct and the organization's *mission*.'"  *Id.*; *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996).  The second limitation prohibits an organization from "'manufactur[ing] the injury necessary to maintain a suit from its expenditure of resources on that very suit.'"  *D.C. Appleseed Ctr.*, 54 A.3d at 1209 (quoting *Am. Soc'y for the Prevention of Cruelty to Animals*, 659 F.3d at 25 (quoting *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990))).

not see how appellant could "say that you've had to spend substantial resources" to respond to appellees' listing. Appellees "ha[d] one property," which had now been rented to someone with a Section 8 voucher, and they apparently were no longer advertising "that way." Third, ERC "can't show anything but a self-inflicted injury." And finally, appellant was seeking declaratory and injunctive relief but had presented no evidence that appellees would "continue to do the wrong."

Although the trial judge was thoughtful in dismissing the case, he did not expressly apply the guidance of the seminal cases discussed herein. *Havens Realty* and its progeny are more directly on point than the decision in *Village of Arlington Heights*. Moreover, it appears that the court neither accepted the truth of ERC's allegations nor engaged in the type of fact-finding permitted to resolve a question of jurisdiction. See *infra*.

The court did appreciate that diversion of resources does not necessarily confer organizational standing because some types of expenditures do not qualify. *See Friends of Tilden Park*, 806 A.2d at 1207 (expenses for "legal counseling" and litigation do not confer standing). In this respect, therefore, the trial court properly considered whether ERC's diversion of its resources was a "self-inflicted injury." But ERC alleged that it had "committed scarce resources . . . to counteract

[appellees'] discriminatory conduct." And, at this stage of the litigation, the court was obliged to accept these allegations as true.

> Instead of focusing entirely on the voluntariness of the ERC's diversion of resources, . . . the [trial] court should have asked, first, whether Post's alleged discriminatory conduct injured the ERC's interest in promoting fair housing and, second, whether the ERC used its resources to counteract that harm. While the diversion of resources to litigation or investigation in anticipation of litigation does not constitute an injury in fact sufficient to support standing, the ERC's alleged diversion of resources to programs designed to counteract the injury to its interest in promoting fair housing could constitute such an injury.

*Equal Rights Ctr. v. Post Props.*, 633 F.3d at 1140 (ERC's diversion of resources in that case was a "self-inflicted" injury that did not confer standing).

We conclude that the complaint in this case, although scanty in describing the resources diverted, was sufficient to survive scrutiny under Rule 12 (b)(6) or Rule 12 (c). But this holding does not necessarily end the inquiry. "Standing analysis is different 'at the successive stages of the litigation.'" *Grayson*, 15 A.3d at 232 (quoting *Lujan*, 504 U.S. at 561). "Thus, the examination of standing in a case that comes to us on a motion to dismiss is not the same as in a case involving a summary judgment motion; the [plaintiff's] burden of proof is less demanding

when the standing question is raised in a motion to dismiss[,]" *Grayson*, 15 A.3d at 232, or, as here, in a motion for judgment on the pleadings. *See Equal Rights Ctr. v. Post Props.*, 633 F.3d at 1141 n.3 (holding that ERC did not have standing, but emphasizing that court was reviewing grant of motion for summary judgment filed after the close of discovery); *id*. at 1142-43 (Rogers, J., concurring) (same). In this context, the court may use tools that are not normally available when it is ruling on a motion to dismiss or a motion for judgment on the pleadings. When jurisdiction over a case depends on a factual question, the court may independently review the evidence and conduct additional fact-finding to determine whether it has jurisdiction. *Matthews v. Automated Bus. Sys. & Servs., Inc.*, 558 A.2d 1175, 1179 (D.C. 1989); *Grayson*, 15 A.3d at 232 & n.28. "Generally, the determination of jurisdictional facts is a matter for the court, not a jury, . . . and the court has broad discretion in determining how to proceed in finding such facts . . . ." *Matthews*, 558 A.2d at 1179-80 (citation omitted). Once the court has completed fact-finding on a jurisdictional question, it may of course base its ruling on all of the materials of record, including the facts found. *Matthews*, 558 A.2d at 1179.

## IV.    Conclusion

For the aforementioned reasons, we reverse the trial court's ruling dismissing appellant's complaint and remand for further proceedings consistent with this opinion.

*It is so ordered.*