*Notice:* *This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-CV-313

JAMES W. MOELLER, APPELLANT,

V.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB4172-18)

(Hon. Fern Flanagan Saddler, Trial Judge)

(Submitted March 31, 2021                    Decided July 1, 2021)

James W. Moeller filed briefs *pro se.*

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, *Caroline S. Van Zile*, Principal Deputy Solicitor General, *Carl J. Schifferle*, Deputy Solicitor General, and *Sonya L. Lebsack*, Assistant Attorney General, were on the brief for appellee.

Before THOMPSON and DEAHL, *Associate Judges*, and FERREN, *Senior Judge*.

THOMPSON, *Associate Judge*: Appellant James W. Moeller appeals from the Superior Court's grant of summary judgment to defendant/appellee the District of Columbia (the "District") on Mr. Moeller's claim that the District — specifically, the District's Public Service Commission ("PSC") — violated the District of

Columbia Human Rights Act ("DCHRA")[1] by utilizing language in a job vacancy announcement that was discriminatory on the basis of age. We reverse the grant of summary judgment and remand for further proceedings pertinent to whether Mr. Moeller has standing to maintain this action.

## I.

On May 23, 2018, the PSC announced two vacancies for attorney-advisors in the agency's Office of the General Counsel, in a notice designated as "Job ID 18523." A section of the notice stated the following under the heading "Education and Experience":

> Graduation from an accredited law school with a Juris Doctor Degree (J.D.). The incumbent should be a recent law school graduate with D.C. Bar Membership.

In his June 13, 2018, complaint filed in the Superior Court alleging age discrimination, Mr. Moeller alleged that the PSC notice violated the DCHRA provision that prohibits the "print[ing] or publish[jng]" of "any notice or advertisement . . . relating to employment" that "unlawfully indicat[es] any preference, limitation, specification, or distinction[] based on" a protected

---

[1] D.C. Code §§ 2-1401 et seq. (2021 Repl.).

characteristic, including "age."  D.C. Code § 2-1402.11(a)(4)(B) (2021 Repl.). The complaint, which sought both injunctive relief and damages, asserted that Mr. Moeller was sixty years old and was "deterred . . . from submitting a job application in response to th[e] announcement" "[b]ecause the announcement expressed a preference for a 'recent law school graduate.'"  The District of Columbia moved to dismiss the complaint for lack of standing.  The Honorable Neal Kravitz denied the motion, determining that at the motion-to-dismiss stage, Mr. Moeller satisfied the requirement for suing under D.C. Code § 2-1403.16(a) (2021 Repl.), in that he claimed that the language in question "contained a clear 'preference, limitation, specification, or distinction' based on age," plausibly alleged that the language deterred him from applying for the attorney-advisor positions, and thus was a "person claiming to be aggrieved" by a discriminatory practice. *Id.*

The case proceeded to discovery, and after the close of discovery, the parties filed cross-motions for summary judgment.  The court (the Honorable Fern Flanagan Saddler, to whom the case had been transferred) denied both motions, reasoning that there were material facts remaining in dispute, including the age of "recent law school graduates" and whether Mr. Moeller "was actually deterred from applying to the position based upon the alleged ageist language" in the PSC

announcement. Both parties sought reconsideration, the District doing so on the ground that Mr. Moeller had failed to produce during discovery his proffered evidence (a Law School Admissions Council report) that the "vast majority" of recent law school graduates are between the ages of 28 and 32. On reconsideration, Judge Saddler entered summary judgment in favor of the District, reasoning that without the now-inadmissible LSAC Report, Mr. Moeller had "failed to produce any support for his claim that the phrase 'recent law school graduate' constitutes discriminatory language based upon age, in violation of the [DCHRA]." Judge Saddler found that "no reasonable fact finder could find in favor of [Mr. Moeller] on his claim of violation of the DCHRA."

This appeal followed. Appellant urges us to hold that he needed no proof of the typical age of a new law school graduate because the term "recent law school graduate" in an advertisement for a specific job is per se discriminatory. The District disagrees, arguing that the surrounding context in the PSC announcement makes clear that the statement that the applicant should be a "recent law school graduate" denotes that the advertised positions were entry-level positions "wherein a law degree is required but having worked as a lawyer is not." But the District's lead-off argument is that we should resolve the matter on the ground that Mr. Moeller lacked standing to challenge the Job ID 18523 announcement as

discriminatory because he neither applied for the positions advertised nor demonstrated a real interest in the jobs.

## II.

"[E]ven though Congress created the District of Columbia court system under Article I of the Constitution, rather than Article III, this court has followed consistently the constitutional standing requirement embodied in Article III." *Grayson v. AT&T Corp.*, 15 A.3d 219, 224 (D.C. 2011) (en banc). "Thus, [a plaintiff] must allege 'some threatened or actual injury resulting from [] putatively illegal action'[] in order for th[e] court to assume jurisdiction." *Id.* (footnote omitted). Standing is "a threshold jurisdictional question which must be addressed prior to and independent[ly] of the merits of any party's claim." *Equal Rts. Ctr. v. Props. Int'l*, 110 A.3d 599, 603 (D.C. 2015) (quoting *W.H. v. D.W.*, 78 A.3d 327, 337 (D.C. 2013) (internal quotation marks omitted)).

Our case law establishes that "standing under the DCHRA is co-extensive with standing under Article III." *Molovinsky v. Fair Emp't Council of Greater Wash., Inc.*, 683 A.2d 142, 146 (D.C. 1996). This means that the language of D.C. Code § 2-1403.16(a) creating a cause of action for "[a]ny person claiming to be

aggrieved by a[] . . . discriminatory practice," D.C. Code § 2-1403.16(a), does not eliminate or overcome the requirement that "a party seeking to bring a claim must allege '. . . a personal stake in the outcome of the controversy' as to 'justify exercise of the court's remedial powers on his behalf.'" *Equal Rts. Ctr.*, 110 A.3d at 603 (quoting *W.H.*, 78 A.3d at 337).[2]  Thus, a DCHRA plaintiff must have "suffered 'injury in fact' – an actual or imminent, concrete and particularized, invasion of a legally protected interest" that is "fairly . . . trace[able] to defendant's challenged actions." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted)).

The private-right-of-action provision of Title VII of the Civil Rights Act of 1964 contains language similar to that of D.C. Code § 2-1403.16(a).  *See* 42 U.S.C. 2000e-5(b) (authorizing private suits by any "person claiming to be aggrieved" by violations of that Act).  Describing the requirements for standing to sue under the

---

[2] *See also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (rejecting the notion "that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," because "Article III standing requires a concrete injury even in the context of a statutory violation"); *Grayson*, 15 A.3d at 243-244 ("[W]e will not lightly infer [an] intent on the part of the Council" to "eliminat[e] our constitutional standing requirement," i.e., the requirement that a plaintiff show a concrete and particularized injury-in-fact to himself).  A "mere interest in the problem" does not suffice for standing.  *United States v. Students Challenging Regul. Agency Procs.*, 412 U.S. 669, 689 n.14 (1973).  Nor does a mere "setback to . . . abstract social interests." *Equal Rts. Ctr.*, 110 A.3d at 604.

Title VII provision prohibiting job advertisements that "indicat[e] any preference . . . based on race [or other prohibited categories]," *id.* § 2000e-3(b), courts have stated that "[t]o be aggrieved . . . a person [alleging that he was deterred from applying for a specific job] must be able to demonstrate that he has a real, present interest in the type of employment advertised" and "[i]n addition, . . . must be able to show he was effectively deterred by the improper ad from applying for such employment." *Hailes v. United Air Lines*, 464 F.2d 1006, 1008 (5th Cir. 1972); *see also Newark Branch, NAACP v. Harrison*, 907 F.2d 1408, 1414-16 (3d Cir. 1990) (holding that the district court did not err in dismissing the NAACP's original complaint for lack of standing where the NAACP did not allege or show that at least one of its members had "a real and genuine interest in municipal employment with [defendant] Harrison"). This court "generally follow[s] Title VII analysis in discrimination cases brought under the DCHRA." *Psychiatric Inst. v. District of Columbia Comm'n on Hum. Rts.*, 871 A.2d 1146, 1151 n.2 (D.C. 2005).

In this case, Mr. Moeller alleged in his complaint that he was deterred from applying for the PSC attorney-advisor positions described in Job ID 18523 because of the language of the announcement that (allegedly) expressed a preference for younger candidates. We agree with the Superior Court that at the motion-to-

dismiss stage, that allegation was sufficient to state a claim and to defeat dismissal for lack of standing.[3] But we are now asked to consider the issue of standing with the benefit of the summary judgment record, including the evidence amassed during discovery.[4] We recognize that some courts have skipped over a standing analysis and have addressed, as a merits matter, the defendant's claim that the plaintiff alleging discriminatory job advertising was not actually deterred from applying for a job by the advertisement's allegedly discriminatory language. *See, e.g.*, *Hailes v. United Airlines*, 464 F.2d at 1008-09 (finding "no merit in United's contention that the[] facts present[ed] no 'case or controversy' within the court's constitutional jurisdiction," but remanding "for factual development by trial or otherwise, and a determination by the district court of whether Hailes was reasonably inhibited in violation of his Title VII rights from seeking employment

---

[3] *See Grayson*, 15 A.3d at 245-46 ("At the pleading stage and when facing a motion to dismiss, a complaint that contains general factual allegations of injury resulting from the defendant's conduct may suffice," as we "presume that general allegations embrace those specific facts that are necessary to support the claim." (internal quotation marks and alterations omitted)); *see also id.* at 246 ("For purposes of ruling on a motion to dismiss for want of constitutional standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party").

[4] "When a lawsuit reaches the summary judgment stage, the mere allegations of the pleadings become insufficient. Constitutional standing must be shown through specific facts set forth by affidavit or other evidence to survive a motion for summary judgment." *Grayson*, 15 A.3d at 246 (internal quotation marks omitted).

with United"); *see also Banks v. Heun-Norwood*, 566 F.2d 1073, 1074, 1076-77 (8th Cir. 1977) (reasoning that the plaintiff was not aggrieved in that it was the low salary mentioned when she inquired about an advertised job, rather than the ad's discriminatory language, that deterred her from applying for the job, but nevertheless going on to declare that the advertisement for a "[y]oung man" facially "violated the unambiguous provisions of 2000e-3(b)"). Nevertheless, we are constrained to attend to the standing issue first, as "the basic function of the standing inquiry is to serve as a threshold a plaintiff must surmount *before* a court will decide the merits question[.]" *Grayson*, 15 A.3d at 229; *cf. UMC Dev., LLC v. District of Columbia*, 120 A.3d 37, 49 (D.C. 2015) ("[W]e cannot reach beyond that determination [of lack of subject matter jurisdiction] to consider whether those claims would be meritorious if the defect in standing were cured.").

## III.

The District, relying on the summary judgment record, urges us to hold on the undisputed facts that Mr. Moeller lacks standing. The District emphasizes that Mr. Moeller, a 1984 graduate of Harvard Law School and a published legal scholar, has over thirty years of experience in utility regulation and energy law and at one point earned as much as $250,000 a year — while the salary range for the

attorney advisor positions advertised through Job ID 18523 was $80,703 to $124,766. The District also emphasizes Mr. Moeller's acknowledgment during his deposition that he "[p]robably" did not apply for the positions in question because he had not been granted an interview when he applied for an earlier-posted PSC attorney-advisor position (a position for which Judge Kravitz determined Mr. Moeller was not qualified because the position was open to existing agency employees only).[5] The District further points to Mr. Moeller's statements in the course of this litigation that that he "need not prove that he, himself, was deterred" from applying because of the allegedly discriminatory language of the PSC announcement and that this case is about "social justice" rather than about damages for alleged injury to himself. The District notes in addition that Mr. Moeller has been the plaintiff in a number of age-discrimination lawsuits against entities (including FERC and the Office of People's Counsel) involved with utility

---

[5] The record shows that in February 2018, Mr. Moeller submitted an application to the PSC in response to an earlier attorney-advisor vacancy announcement, Job ID 2483, that was posted on January 30, 2018. That announcement specified "[t]hree (3) to seven (7) years of relevant professional experience." Mr. Moeller was not invited to interview for that position, and he averred in his complaint that the PSC did not send him an interview invitation because of his age. Judge Kravitz found, however, that Job ID 2483 was an internal vacancy announcement, ruled that Mr. Moeller was lawfully disqualified, and dismissed the portion of Mr. Moeller's complaint that was based on his unsuccessful application for that position. Mr. Moeller has not challenged that ruling.

regulation matters (implying, it seems, that Mr. Moeller has made something of a second career of bringing age-discrimination cases). The District asserts that in light of all the foregoing, Mr. Moeller failed to demonstrate that he had a genuine interest in either of the PSC positions and that he was deterred from applying because of the allegedly discriminatory language in the job announcement.

Mr. Moeller counters that his "three decades of experience relevant to the work of a public utility regulatory commission like the PSC" is "ample evidence" that he had a "real, present interest" in PSC employment. He stated during his deposition that at the time the Job ID 18523 notice was posted, he was having a hard time finding employment, had applied for 300 jobs but received only two interviews, and was genuinely interested in the job. He cites his application for the earlier-posted PSC attorney-advisor, as well as his having applied for positions with the Office of People's Counsel and other organizations that practice before utility regulators and that pay salaries comparable to the salary noted in the Job ID 18523 advertisement, as further evidence evincing his genuine interest in the positions. He cites in addition, as other "ample evidence" demonstrating his standing, his deposition testimony that he has earned no income since he started his own law firm in 2014 and his deposition testimony that the language of the ad deterred him from applying for the position described in Job ID 18523. Mr.

Moeller also argues that the fact that he did not apply for the positions is proof that he was deterred by the age-preference allegedly expressed in the job announcement.

We conclude that the record reveals a genuine dispute of fact as to whether Mr. Moeller had "a real, present interest" in the advertised PSC positions[6] and was actually deterred from applying because of the "recent law school graduate" language of the notice. We think Judge Saddler got it right when she initially denied summary judgment on the ground that "the determination regarding whether [Mr. Moeller] was actually deterred from applying to the position based upon the alleged ageist language in the Commission's May 23, 2018 announcement is a disputed factual issue." It appears to us that nothing had changed to resolve that issue when the court ruled on the reconsideration motions

---

[6] In stating this requirement, we take care to point out that this case does not present any issue of — and Moeller does not now argue that he has — "tester standing." *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982) (African-American tester who approached real estate agent and received untruthful information about the availability of housing suffered injury "in precisely the form the statute was intended to guard against" and had standing, even though she had no intention of buying or renting a home). In his reply brief, Mr. Moeller, who did not approach PSC about the advertised jobs, acknowledges — and argues that he has met — the requirement that he show that he had "a 'real, present interest' in the employment advertised in Job ID 18523 and that he was 'effectively deterred' by the unlawful language in Job ID 18523 from seeking employment with the PSC."

and granted summary judgment in favor of the District based on the absence of evidence about the average age of recent law school graduates.

Because the Superior Court did not resolve the factual issues germane to standing, we conclude that a remand is necessary for that court, after conducting any further proceedings it deems necessary, to resolve the factual question on which jurisdiction depends.[7] *See Equal Rts. Ctr.*, 110 A.3d at 606 (explaining that when jurisdiction over a case depends on a factual question, the court may independently review the evidence and conduct additional fact-finding to determine whether it has jurisdiction); *see also Matthews v. Automated Bus. Sys. & Servs., Inc.*, 558 A.2d 1175, 1179-80 (D.C. 1989) ("Generally, the determination of jurisdictional facts is a matter for the court, not a jury, . . . and the court has broad discretion in determining how to proceed in finding such facts.") (citation omitted); *Haase v. Sessions*, 835 F.2d 902, 904 (D.C. Cir. 1987) (the court may undertake an evidentiary hearing on facts germane to standing).

---

[7] To state the matter more bluntly, the Superior Court's task on remand will include determining whether Mr. Moeller's claim of aged-based discrimination is "the product of a project to obtain a lawsuit" rather than a PSC position. *Hailes v. Equitable Life Assurance Soc'y*, 729 F.2d 1037, 1037 (5th Cir. 1984).

Wherefore, the grant of summary judgment in favor of the District of Columbia is reversed, and the matter is remanded for the Superior Court to "engage[] in the type of fact-finding permitted to resolve a question of jurisdiction." *Equal Rts. Ctr.*, 110 A.3d at 605.

*So ordered.*